UNITED STATES of America

v.

Dominique ORSINI, Defendant.

No. 74 CR 492.

United States District Court,
E. D. New York.

Sept. 20, 1976.

Findings of Fact and Conclusions of
Law Sept. 28, 1976.

**230**

This article concerned the methods used by the Drug Enforcement Administration, an agency of the Federal Government, to obtain physical control and custody of suspected international drug dealers in order to bring such persons to the United States to stand trial for alleged violations of United States narcotics laws.

Mr. Orsini seeks this information in order to show that the circumstances surrounding his apprehension in Senegal constituted a deprivation of due process of law, thus mandating a dismissal of the indictment against him.

Specifically, Mr. Orsini seeks documents and testimony concerning two subject matters: first, the identity of, "U. S. Officials [who] privately tell the story of how the Government of Paraguay was threatened with the loss of American aid unless it extradicted one Auguste Ricorde"; and second, the identify of, "one federal official who said, 'Clearly, we have paid for some of these people. It might not have been a specific *quid pro quo*, but we would give x dollars or x cases of ammunition to officials who helped get these people on planes.'"

David G. Trager, U.S. Atty., E. D. N. Y., Brooklyn, N. Y., by David A. DePetris, Asst. U.S. Atty., Brooklyn, N. Y., for the United States.

Williams, Connolly & Califano by Richard M. Cooper, Washington, D. C., of counsel, Edward L. Smith, New York City, for Anthony Marro.

Gino E. Gallina, New York City, for defendant Orsini.

## MEMORANDUM AND ORDER

BRAMWELL, District Judge.

This matter comes before the Court on the motion of *Newsweek* Magazine Reporter Anthony Marro to quash a *subpoena duces tecum* issued upon the application of the defendant, Dominique Orsini. The subpoena seeks to compel Mr. Marro to disclose the identity of certain confidential sources from whom he obtained information. This information was subsequently published and disseminated to the general public in an article appearing in the August 16, 1976 edition of *Newsweek* Magazine.

### I

It would seem to be the position of Mr. Orsini that the information sought in the instant subpoena would somehow prove of significant value in the determination of whether or not he was subjected to acts of "torture, brutality, and inhumanity committed against him by or at the direction of American agents". *United States v. Orsini, et al.*, 402 F.Supp. 1218 at 1219 (E.D.N.Y. 1975). As indicated in this Court's order of October 24, 1975, such allegations, if substantiated, would require the dismissal of the instant indictment filed against the defendant, as mandated by *United States v. Toscanino*, 500 F.2d 267 (2d Cir. 1974); *United States ex rel. Lujan v. Gengler*, 510 F.2d 62 (2d Cir. 1975); and *United States v. Lira*, 515 F.2d 68 (2d Cir. 1975). *See United States v. Orsini, et al., supra.*

Mr. Marro contends that this subpoena should be quashed on the following three

grounds: first, that the information it seeks is immaterial and irrelevant to the Toscanino evidentiary hearing authorized by this Court's Order of October 24, 1975; second, that the information sought is privileged under the First Amendment to the Constitution of the United States; and third, that the information sought is privileged under New York's Newsmen's Shield Law, Section 79–H of the Civil Rights Law, and under Article I, Section 8 of the Constitution of the State of New York, as both are incorporated into the Federal Common Law.

## II

After careful consideration of all the motion papers, memoranda of law, and supporting affidavits submitted to it by the respective parties, and after oral argument, this Court is of the opinion that under the circumstances presented in the instant case, the *subpoena duces tecum* issued to Mr. Marro *should* and *must* be quashed.

It is patently clear that the subject matter sought in the subpoena bears no reasonable relationship to the issue of gross mistreatment of Mr. Orsini by or at the direction of American officials. Counsel for Mr. Marro, Richard M. Cooper, Esq., and Edward L. Smith, Esq., have ably argued in motion papers and in oral argument that the information sought by the defendant is irrelevant and immaterial to the issue raised by the *Toscanino* Hearing. The Court agrees with, and has incorporated into its decision the persuasive reasoning of learned counsel on this point, concluding that the information sought by the instant subpoena has absolutely no connection with either the treatment that Mr. Orsini received while in Senegal, or with the role, if any, of representatives, officials, or agents of the United States Government with reference to such treatment.

The first item sought in the subpoena relates to a statement concerning the case of one Auguste Ricorde the events of which transpired in Paraguay. Mr. Orsini, however, was arrested and expelled from Senegal and has no known connection with Auguste Ricorde or with the nation of Para-

guay. Information which relates to communications between the Government of Paraguay and the Government of the United States has absolutely no bearing on the issue of Mr. Orsini's treatment in Senegal.

The second item set forth in the subpoena is also of no relevancy to the issue of the standard of treatment accorded Mr. Orsini while he was in Senegal. The statement which is the subject of inquiry is itself not specific. Moreover, it too makes no reference to Mr. Orsini, or to any particular case. The statement does not even relate to the treatment of persons brought into the United States for trial, but rather it refers to payments, made in order to gain the cooperation of foreign governments. Such payments, to secure the return of fugitives to the United States, would not serve as a ground for dismissal of the indictment under the *Toscanino* Doctrine. *See United States v. Toscanino, supra; United States ex rel. Lujan v. Gengler, supra; United States v. Lira, supra. See also United States v. Lovato*, 520 F.2d 1270 (9th Cir. 1975).

The standard of conduct which is proscribed by *Toscanino* and its progeny is the infliction upon the defendant of grossly cruel and inhumane treatment by or at the direction of American officials or agents. *United States v. Toscanino, supra; United States ex rel. Lujan v. Gengler, supra; United States v. Lira*, supra. *See also United States v. Lovato*, supra.

Mr. Orsini apparently maintains that he need not prove such cruel and inhumane treatment, but rather that a showing of bribery of foreign officials by American agents is sufficient. This position is totally contrary to the law as it now stands. The case of the *United States ex rel. Lugan v. Gengler, supra*, has reasserted the continuing vitality of the *"Ker-Frisbie"* Doctrine which provides that:

[D]ue process of law is satisfied when one present in court is convicted of crime after having been fairly apprised of the charges against him and after a fair trial in accordance with constitutional safeguards. There is nothing in the Constitu-

tion that requires a court to permit a guilty person rightfully convicted to escape justice because he was brought to trial against his will.

*Frisbie v. Collins*, 342 U.S. 519 at 522, 72 S.Ct. 509 at 512, 96 L.Ed. 541 (1952) (Mr. Justice Black writing for a unanimous court). *See also, Ker v. Illinois*, 119 U.S. 436, 7 S.Ct. 225, 30 L.Ed. 421 (1886). It is manifest that if the Constitution tolerates the forcible kidnapping of a defendant to bring him to justice, then it also tolerates the payment of a bribe to obtain custody of a fugitive defendant.

Accordingly, even if Mr. Orsini were able to establish that a bribe had been paid to Senegalese officials by American agents in order to secure his return to the United States for trial, he would not be entitled to any relief under the *Toscanino* Doctrine. Thus, a subpoena issued to prove that bribery took place is pointless and unwarranted since it fails to provide relevant and material evidence on the *Toscanino* issue presently before the Court. The obvious irrelevancy of the statement is further underlined by the fact that in the instant case for the purposes of the *Toscanino* hearings depositions have already been taken of Drug Enforcement Administration agents and other American officials in Senegal who would have knowledge of any alleged bribery.

Finally, it should be noted that neither of the two items sought in the instant subpoena relates in any way to a bribe in Mr. Orsini's case. Therefore permitting such inquiry would be a futile gesture.

Thus, for the reasons set forth above, the Court is clearly warranted in its finding that the *subpoena duces tecum* is irrelevant and immaterial for the purpose of the *Toscanino* hearing.

### III

■ Turning now to the second reason put forth by Mr. Marro in his motion to quash, this Court recognizes the argument of many members of the press, that the First Amendment stands as an absolute prohibition against any official abridgement of freedom of the press. This view encompasses absolute protection of journalists against forced disclosure of their confidential sources. However, the Court finds this broad interpretation to be contrary to the weight of authority. *See Branzburg v. Hayes*, 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972); *Democratic National Committee v. McCord, In Re Bernstein*, 356 F.Supp. 1394 (D.D.C.1973); *Loadholtz v. Fields*, 389 F.Supp. 1299 (M.D.Fla.1975). Rather, this Court finds that there exists no absolute rule of privilege protecting newsmen from disclosure of confidential sources. Instead, what is required is a case by case evaluation and balancing of the legitimate competing interests of the newsman's claim to First Amendment protection from forced disclosure of his confidential sources, as against the defendant's claim to a fair trial which is guaranteed by the Sixth Amendment.

■ However, in the instant case, it is clear that the balance of interests weighs decidedly in favor of protecting the confidentiality of Mr. Marro's sources, inasmuch as the information sought is wholly irrelevant and immaterial to the *Toscanino* issue now before this Court.

### IV

Accordingly, on the grounds of irrelevancy and immateriality, as well as upon the grounds of First Amendment protection, the *subpoena duces tecum* issued to Mr. Marro is hereby quashed.[1]

It is SO ORDERED.

### FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

*Factual Background of the* Toscanino *Evidentiary Hearing*

This matter initially came before the Court on the motion of the defendant Dom-

1. Therefore the Court finds it unnecessary to consider the third ground raised by Mr. Marro as a basis to quash the subpoena, to wit, that the information sought by the subpoena is privileged under Section 79–H of the Civil Rights Law of New York and Article 1, § 8 of the New York Constitution, as incorporated into Federal Common Law.

inique Orsini to dismiss the indictment filed against him "in the interest of justice". Mr. Orsini alleged in a sworn affidavit presented to this Court:

that he was unlawfully kidnapped, beaten and drugged by Agents of the United States Government in Dakar, Senegal and brought to the United States. That the defendant appeared before the Court in Dakar, Senegal, and after a hearing was ordered to be released. That Agents of the United States Government, together with others acting at their directions deliberately ignored and conspired to controvert the lawful directive of the Senegalese Court and held the defendant against his will.

The defendant further alleged that he was continuously tortured, kicked and beaten. That he suffered a severe wound of the hand and was denied proper medical attention by the American Agents. Finally, that the American Agents used "drugs to reduce his resistance and in an act of illegality kidnapped the defendant and transported him to the United States".

On October 24, 1975, this Court entered an order directing an evidentiary hearing to determine. the validity of these allegations as required by *United States v. Toscanino*, 500 F.2d 267 (2d Cir. 1974) and its progeny.[1] The Court indicated in that order that the aforementioned "allegations, if substantiated, would clearly constitute a deprivation of defendant's constitutional rights of due process . . . and such denial . . . would require the dismissal of the indictment filed against Mr. Orsini". *See United States v. Dominique Orsini, et al.*, 402 F.Supp. 1218 (E.D.N.Y.1975).

The following constitutes this Court's formal Findings of Fact, Conclusions of Law, and Order with reference to the *Toscanino* evidentiary hearing.

*Findings of Fact*

1. In 1974, the defendant, Dominique Orsini, was indicted for a conspiracy to import and distribute narcotics into the United States by a grand jury sitting in the Eastern District of New York.

2. On July 30, 1975, the United States Department of State directed the American Embassy in Dakar, Senegal to contact the Senegalese government in order to effect the provisional arrest of the defendant, Dominique Orsini. (Hearing Minutes, 11/20/75 at 66, 70 (Fields); Hearing Minutes, 11/21/75 at 134–35 (Tryal); Hearing Minutes, 7/26/76 at 6–7 (Davis)).

3. On August 6, 1975, the defendant, Dominique Orsini, left Buenos Aires, Argentina for Nice, France via Dakar, Senegal. Agent Tryal of the United States Drug Enforcement Administration travelled aboard the very same aircraft. Upon arrival at the airport in Dakar, Senegal, Agent Tryal identified Mr. Orsini to Charge D'Affaires Allan Davis of the American Embassy in Dakar, Senegal, who in turn requested the Senegalese police to arrest Mr. Orsini. Shortly thereafter Mr. Orsini was arrested by the Senegalese police who removed him from the Dakar Airport. (Hearing Minutes, 11/21/75 at 135–40 (Tryal); Hearing Minutes, 7/26/76 at 7–10 (Davis)).

4. No United States Government official, representative or agent had any contact or communication with Mr. Orsini between August 7, 1975 and August 25, 1975. No payment of any kind, whether of money, goods, or services was made by any American official, representative, or agent to any official, representative, agent, or member of the Senegalese government in exchange for their assistance in the arrest and expulsion of Mr. Orsini to the United States. (Hearing Minutes, 11/21/75 at 138–39 (Tryal); Hearing Minutes, 7/26/76 at 10, 23–24 (Davis)).

5. On August 22, 1975, State Department Legal Advisor Louis Fields, Esq. and Drug Enforcement Administration Agent Bocchichio travelled from the United States to Dakar, Senegal. Mr. Fields possessed extradition documents for defendant Orsini.

---

1. *See United States ex rel. Lujan v. Gengler*, 510 F.2d 62 (2d Cir. 1975); *United States v. Lira*, 515 F.2d 68 (2d Cir. 1975); *United States v. Lovato*, 520 F.2d 1270 (9th Cir. 1975).

Shortly after their arrival in Dakar, Mr. Fields and Agent Bocchichio met with Allan Davis, Charge D'Affaires of the American Embassy in Dakar. Thereafter, they visited the Senegalese Ministry of the Interior and the Ministry of Justice. Mr. Fields and Mr. Davis presented the extradition documents to the appropriate representatives of the Senegalese government. (Hearing Minutes, 11/20/75 at 27–38 (Fields); Hearing Minutes, 11/21/75 at 232–235 (Bocchichio); Hearing Minutes, 7/26/76 at 11–13 (Davis)).

6. On August 23, 1975, a representative of the Senegalese government, Sadibou Ndiaye, the head of the Federal Judiciary Police, indicated in a telephone call he placed to Mr. Davis that the Senegalese government would retain custody of Mr. Orsini until Monday morning, August 25, 1975, at which time Orsini would be delivered to American agents at the Dakar Airport for a Pan American flight to New York. Mr. Davis had anticipated this possibility and prior to his conversation with Mr. Ndiaye had made flight reservations for the defendant and Agents Bocchichio and Collier. This was done because Dakar—New York flights do not depart on a daily basis and are usually overbooked. Agent Collier had previously been notified in Paris, France that it would be necessary for him to assist in the escort of Mr. Orsini from Senegal to New York in the event that the Senegalese Government was to determine that Mr. Orsini be placed in the custody of American officials. (Hearing Minutes, 11/20/75 at 38–42 (Fields); Hearing Minutes, 11/21/75 at 182 (Collier); Hearing Minutes, 11/21/75 at 235 (Bocchichio); Hearing Minutes 7/26/76 at 14–16 (Davis)).

7. On August 23, 1975 the Court of Appeals of Senegal ordered Mr. Orsini released. Shortly thereafter, the Senegalese Federal Judiciary Police apparently rearrested him.

8. On August 24, 1975, Agent Collier arrived in Dakar, Senegal. (Hearing Minutes, 11/21/75 at 182–184 (Collier)).

9. In the early morning hours of August 25, 1975, the Senegalese police attempted to take Mr. Orsini from the jail in which he was incarcerated in order to transport him to the Dakar Airport. Mr. Orsini resisted and struggled with the police. During the course of the scuffle with the police, Mr. Orsini suffered a cut wrist. Mr. Orsini was taken to the airport after receiving medical treatment for his superficial wound.

10. Upon his arrival at the Dakar Airport, Mr. Orsini violently struggled with the Senegalese police and screamed continuously. Finally, Mr. Orsini was placed aboard the aircraft which was scheduled to fly to New York. However, for safety reasons, the pilot refused to depart with Mr. Orsini aboard unless Orsini was sedated. A Peace Corps doctor who was then called, administered, with the express consent of the defendant, a dosage of valium in order to calm him. Subsequently, the aircraft departed for the United States. (Hearing Minutes, 11/20/75 at 42–49, 52–60 (Fields); Hearing Minutes, 11/21/75 at 184–194 (Collier); Hearing Minutes, 11/21/75 at 236–240 (Bocchichio); Hearing Minutes, 7/26/76 at 17–24 (Davis)).

11. To the extent that Mr. Orsini alleges that he was struck by Agent Bocchichio and that excessive force was utilized by the Senegalese police in removing him from the jail to take him to the airport, his testimony is unsubstantiated and the Court discredits that testimony. The Court further finds that Agent Bocchichio did not assault the defendant Orsini. To the extent that Mr. Marie Appoline Serge testified by deposition that he personally observed someone (possibly Orsini) being dragged from a police station in Dakar, Senegal on August 25, 1975, the Court finds that this testimony is unworthy of belief and further, that a positive identification of Mr. Orsini was not made by Mr. Serge.

12. This Court finds that Mr. Orsini was treated by the Senegalese in a fashion similar to that accorded to all other prisoners held in custody by them. (Hearing Minutes, 11/21/75 at 196 (Collier)).

13. The Senegalese Government did not protest the expulsion of Mr. Orsini to the United States. (Hearing Minutes, 11/20/75 at 60 (Fields)).

*Conclusions of Law*

In *United States v. Lira*, 515 F.2d 68, 70 (2d Cir. 1975), the Court set forth the controlling principles of law to be applied in a case where a *Toscanino* claim is raised:

In general a court's power to bring a person to trial upon criminal charges is not impaired by the forcible abduction of the defendant into the jurisdiction. *Ker v. Illinois*, 119 U.S. 436, 7 S.Ct. 225, 30 L.Ed. 421 (1886); *Frisbie v. Collins*, 342 U.S. 519, 72 S.Ct. 509, 96 L.Ed. 541 (1952). However, in *United States v. Toscanino, supra* [2d Cir., 500 F.2d 267], we held that this general rule, sometimes referred to as the "Ker-Frisbie doctrine," is subject to the overriding principle that where the Government itself secures the defendant's presence in the jurisdiction through use of cruel and inhuman conduct amounting to a patent violation of due process principles, it may not take advantage of its own denial of the defendant's constitutional rights. We there stated that a district court must "divest itself of jurisdiction over the person of a defendant where it has been acquired as the result of the Government's deliberate, unnecessary, and unreasonable invasion of the accused's constitutional rights." 500 F.2d at 275. More recently in *United States ex rel. Lujan v. Gengler*, 510 F.2d 62 (2d Cir., 1975), we reaffirmed the principle that the Ker-Frisbie doctrine does not bar judicial scrutiny of "conduct of the most outrageous and reprehensible kind by United States government agents," which results in denial of due process, 510 F.2d at 65, although we there found that the government conduct did not reach the level proscribed by *Toscanino*.

Essential to a holding that *Toscanino* applies is a finding that the gross mistreatment leading to the forcible abduction of the defendant was perpetrated by representatives of the United States Government. In *Toscanino*, for instance, we stated that upon demand the defendant would be required to establish "that the action was taken at or by the direction of United States officials."

In applying the aforementioned controlling principles of law as articulated in *Toscanino, supra; Lujan, supra*, and *Lira, supra*, to the Court's Findings of Fact previously set forth, this Court reaches the following Conclusions of Law:

1. The arrest and subsequent expulsion of the defendant Dominique Orsini from Senegal were sovereign and legitimate acts of the Senegalese Government.

2. Mr. Orsini was not beaten, tortured, or subjected to inhumane treatment by American agents or officials. Moreover, there is no evidence to indicate any American involvement in any alleged assault on Mr. Orsini by Senegalese or other foreign agents or policemen. Furthermore, if Mr. Orsini was assaulted, this Court finds that American agents or officials had no knowledge of said alleged assault. Finally, the Court finds that Mr. Orsini was neither tortured nor subjected to inhumane treatment by anyone, whether American, Senegalese, or other foreign national agents.

3. The dosage of valium administered to Mr. Orsini was given with his express consent and only after the aircraft's pilot refused to depart unless Mr. Orsini was sedated. The injection was given by a licensed physician.

4. There is nothing in the record of the evidentiary hearing conducted by this Court to support a finding of American governmental conduct sufficiently shocking to reach the level of a violation of Mr. Orsini's due process rights.

5. There has been no protest lodged by the government of Senegal with reference to the departure of Mr. Orsini from Senegal to the United States.

*Summary of the Court's Determinations and Order*

In sum, this Court finds, after careful consideration of the testimony of the witnesses and the documentary evidence adduced at the recently concluded *Toscanino* Hearing, that the defendant Dominique Orsini was not tortured, beaten, or subjected to inhumane treatment by American agents; nor was he tortured, beaten, or

subjected to inhumane treatment by Senegalese or other foreign national agents or policemen, at the request of, or at the direction of, or with the consent of American agents. It is concluded that any force which may have been used by Senegalese police on August 25, 1975 was both reasonable and justified under the circumstances presented, in that Mr. Orsini was unreasonably and violently resisting the sovereign and legitimate act of the Senegalese Government in expelling him from that country.

In reaching these conclusions, the Court has credited the testimony of Agents Bocchichio, Collier, and Tryal, State Department Legal Advisor Louis Fields, Charge D'Affaires Allan Davis of the American Embassy in Dakar, Senegal and has discredited the testimony of Mr. Orsini and Mr. Serge.

The Court has further considered that no protest was made by the Senegalese Government to the proper diplomatic channels of the United States Department of State with reference to Mr. Orsini's departure from Senegal.

It should be emphasized that even if the Court were to credit Mr. Orsini's testimony, and to consider it in its most favorable light, the events surrounding Mr. Orsini's expulsion from Senegal do not reach the standard of conduct condemned and proscribed by the *Toscanino* Doctrine.

Accordingly, since this Court finds that there has been no violation of the *Toscanino* Doctrine, the Court can and will assert jurisdiction over the defendant Dominique Orsini for the purpose of the prompt and fair disposition of the criminal charges involving Mr. Orsini which are now pending before it.

Therefore, the defendant's motion to dismiss the instant indictment on *Toscanino* grounds is hereby denied.

It is SO ORDERED.