[No. 47860-1.   En Banc.   February 3, 1983.]

DELBERT CLAMPITT, ET AL, *Respondents,* v. THURSTON
COUNTY, *Defendant,* DAVID L. HENDRICK,
*Petitioner.*

*Clifford L. Stilz, Jr.* (of *Fristoe, Taylor & Schultz, Ltd., P.S.*), for petitioner.

*Davies, Pearson & Anderson, P.S.,* by *Richard H. Benedetti,* for respondents.

UTTER, J.—This case requires application and explication of our holding in *Senear v. Daily Journal–American,* 97 Wn.2d 148, 641 P.2d 1180 (1982) that a reporter has a qualified privilege against disclosure of the identity of a confidential source. The lower court issued an order compelling petitioner David Hendrick, a reporter for The Daily Olympian, to identify such a source. Petitioner sought discretionary review by this court which we granted. We vacate the trial court's order and remand for further proceedings on the ground that there was not a sufficient showing to defeat petitioner's privilege.

In 1979, Delbert and Delsie Clampitt (respondents herein) applied for a permit to build a pier in Thurston County (the County). Acting pursuant to the State Environmental Policy Act of 1971 (RCW 43.21C.010 *et seq.*), the Thurston County Regional Planning Council (Council) concluded that an environmental impact statement would be necessary and issued a declaration of significance. On August 29, 1979, County Commissioner Woody Anderson contacted Don Chance, the official who had reviewed the Clampitt proposal, and requested a meeting to discuss the Council's decision. The two men did meet and at their meeting Anderson criticized the decision, emphasizing the Clampitts' power and wealth and the consequent harm they could do to the County. After Chance described the meeting to his superior, Art O'Neal, O'Neal requested that Chance prepare a memo recounting the conversation and Anderson's comments. Chance did so.

At some later time, an unidentified person informed petitioner of the existence of the Chance memorandum. Pursuant to the public records act (RCW 42.17.010 *et seq.*), petitioner requested the memorandum from the Council. After consulting with its attorney, the Council provided petitioner with a copy. On February 26, 1980, petitioner published an article in The Daily Olympian describing the Chance–Anderson meeting and detailing some of the memorandum's contents.

In response to publication of this article, respondents brought an action against Thurston County for outrage.[1] The action did not name petitioner or The Daily Olympian as a defendant but was premised on the County's disclosure to petitioner of the Chance memorandum. On March 10, 1981, respondents deposed petitioner and at that deposition requested that he disclose the identity of the source who had told him of the memorandum. Petitioner refused to answer, claiming reporter's privilege. Respondents then moved to compel him to answer.

Though the underlying action had been brought in Lewis County, the motion to compel was made in Thurston County since that was the county in which petitioner's deposition had been taken. *See* CR 37(a). The Thurston County court recognized that, under *Senear v. Daily Journal–American, supra,* there is a qualified reporter's privilege in Washington but ruled that respondents had made a showing sufficient to defeat the privilege.[2] Specifically, the lower court found that (1) "the pleadings . . . set forth a claim for the tort of outrage"; (2) the identity of petitioner's source was "fundamental" to respondents' claim; and (3) the respondents had made sufficient unsuccessful attempts to independently obtain the identity of petitioner's source and that the information was not otherwise available. The Thurston County court also found that petitioner believed that his source furnished the information only upon an understanding that his or her identity would be preserved.

The issue now facing us is whether the lower court was correct in its ruling that respondents had made a sufficient showing to defeat petitioner's privilege.

---

[1]The complaint also stated a second cause of action for invasion of privacy; however, that cause of action is not pertinent here.

[2]At that time, only the Court of Appeals decision in *Senear* had been rendered. *See Senear v. Daily Journal–American,* 27 Wn. App. 454, 618 P.2d 536 (1980).

## I

■ Until recently, the existence of a reporter's privilege against compulsory disclosure of confidential news sources was unsettled in this state. Last year, however, this court held that, at least in civil cases, reporters in Washington do have a common law privilege against such disclosure. *See Senear,* at 155. A right to claim the privilege arises, however, only if "the interest of the reporter in nondisclosure is supported by a need to preserve confidentiality." *Senear,* at 156. This question in turn depends upon how the reporter received the information and whether the source had a reasonable expectation of confidentiality. *Senear,* at 156.

Because this court's decision in *Senear* issued after the order at issue here and the decision of the Court of Appeals omitted this threshold requirement, the lower court did not expressly address the question. The court did find, however, that petitioner believed that his source furnished information only upon an understanding that his or her identity would be preserved. When the reporter (or his employer) is not a party to the underlying action, such a good–faith belief is quite reliable because he or she has no interest in the action. *Compare Zerilli v. Smith,* 656 F.2d 705, 714 (D.C. Cir. 1981). Such a belief is thus sufficient to give rise to a privilege, at least when the reporter is a disinterested nonparty. The only person who could provide contrary evidence of the source's expectation would be the source himself and his testimony is clearly unavailable in these circumstances.

## II

■ Even where a right to claim the privilege exists it is not absolute. The party seeking discovery may defeat the privilege by showing that (1) his or her claim is meritorious; (2) the information sought is critical to that claim; and (3) he or she has made a reasonable effort to obtain the information by other means. *Senear,* at 155. If these three conditions are satisfied, the reporter's privilege must give way to the interest of the individual litigant seeking discovery,

as well as that of the public, in disclosure. *Senear,* at 155.

In applying this test, however, which is essentially one of balancing (*see Senear,* at 157), our courts must recall that "compelling interests" are at stake on both sides of the scale. *Senear,* at 154. The sacrifice of either, even when necessary, should be viewed as an egregious loss. Thus, the courts should do their utmost to avoid the need for reporter disclosure, ordering it only as a last resort. *Riley v. City of Chester,* 612 F.2d 708, 718 (3d Cir. 1979); *Carey v. Hume,* 492 F.2d 631, 638 (D.C. Cir.), *cert. dismissed,* 417 U.S. 938, 41 L. Ed. 2d 661, 94 S. Ct. 2654 (1974).[3] In some instances, this may require deferral of discovery until the court is absolutely convinced that the three conditions necessary to overcome the privilege are satisfied. *Bruno & Stillman, Inc. v. Globe Newspaper Co.,* 633 F.2d 583, 598 (1st Cir. 1980); *cf. Herbert v. Lando,* 441 U.S. 153, 180 n.4, 60 L. Ed. 2d 115, 99 S. Ct. 1635 (1979) (Powell, J., concurring) (discovery of editorial process).

In addition, while the *nature* of the *Senear* standards remains constant, the stringency with which they are applied varies with the reporter's relationship to the underlying action. At one extreme, reporters who are themselves plaintiffs have little or no privilege. *See, e.g., Anderson v. Nixon,* 444 F. Supp. 1195, 1199 (D.D.C. 1978).[4]

---

[3]For two reasons, federal authority is more than ordinarily persuasive in this area. First, *Senear* relied mainly upon such authority in developing the reporter's privilege. Second, while some federal courts have viewed the privilege as one of federal common law (*see, e.g., Riley v. City of Chester, supra* at 715), most have viewed it as a product of the First Amendment (*see, e.g., Zerilli v. Smith,* 656 F.2d 705, 711–12 (D.C. Cir. 1981); *Miller v. Transamerican Press, Inc.,* 621 F.2d 721, 725 (5th Cir. 1980), *cert. denied,* 450 U.S. 1041 (1981); *Silkwood v. Kerr–McGee Corp.,* 563 F.2d 433, 436–37 (10th Cir. 1977)). Even those cases labeling the privilege a matter of common law have recognized that it is bounded "by an awareness of First Amendment values". *Bruno & Stillman, Inc. v. Globe Newspaper Co.,* 633 F.2d 583, 598 (1st Cir. 1980); *Riley,* at 716.

[4]While on its face *Anderson* purports to be premised on a waiver analysis, the court did in fact balance the plaintiff reporter's First Amendment rights against the need for disclosure. *See Black Panther Party v. Smith,* 661 F.2d 1243, 1265 n.141 (D.C. Cir. 1981).

Reporters who are defendants and reporters who are not involved in the action at all, on the other hand, are significantly protected by *Senear*. Of these two categories, moreover, reporters who are not parties (and whose employers are not parties) receive still greater protection.

> A distinction can also be drawn between civil cases in which the reporter is a party, as in a libel action, and cases in which the reporter is not a party. When the journalist is a party, and successful assertion of the privilege will effectively shield him from liability, the equities weigh somewhat more heavily in favor of disclosure.

*Zerilli v. Smith, supra* at 714; *Riley v. City of Chester, supra* at 716; *Democratic Nat'l Comm. v. McCord*, 356 F. Supp. 1394, 1397 (D.D.C. 1973). Thus, the *Senear* standards should be applied even more stringently in the present case than in *Senear* itself, since there the newspaper claiming the privilege was a libel defendant. *Senear*, at 150.

■ Viewed in light of these considerations, there was not a sufficient showing in the instant case that respondents satisfied the conditions necessary to defeat petitioner's privilege. While preliminary factual findings regarding assertion of the reporter's privilege should be upheld absent an abuse of discretion (*see Carey v. Hume, supra* at 639), the magnitude of the interests involved requires close appellate supervision of that discretion (*see, e.g., Riley v. City of Chester, supra* at 717–18). We believe it was abused here.

In particular, the record does not support the trial court's finding that respondents had exhausted reasonably available alternative sources. While there are limits to this obligation, it is "very substantial". *Zerilli v. Smith, supra* at 714. Federal cases have indicated that taking as many as 60 depositions might be a reasonable alternative. *See Zerilli*, at 714; *Carey v. Hume, supra* at 639.

■ In the present case, the record does not indicate what alternatives the trial court considered and its reasons for rejecting them. It merely stated that respondents had shown that "independent attempts have been made to

secure this information elsewhere with no success and that the information is not otherwise available." Beyond this general conclusion it did not go. This is insufficient when such a sensitive balancing of rights is involved—specific findings are necessary. *Riley v. City of Chester, supra* at 717 (finding that "I have considered from the testimony thus presented that the information appears not to be available from other sources" held insufficient). At the very least, the lower court should have listed the alternatives it considered and stated its reasons for rejecting them.

Indeed, the record before this court indicates that reasonable alternatives which respondents have not investigated do exist. The only efforts they claim to have made are the submission of two sets of interrogatories to the County and taking the depositions of Chance, the author of the memorandum, and O'Neal, the superior to whom it was directed. Yet there were at least two other potential alternatives available. First, an attempt could have been made to determine how a local radio station which also broadcast reports about the memorandum obtained its information. Certainly this option should have been investigated. Second, respondents could have attempted to depose the only other persons who would have had easy access to the memorandum, the other employees under O'Neal. There are currently only 25 such employees. Even allowing for turnover between the time the memo was written and the time petitioner was informed of its existence, the total number of employees who would have had access to the memo during that time period was probably significantly less than the 60 approved in *Zerilli v. Smith, supra*. Especially in light of the ease with which depositions could be taken,[5] we see no reason why deposing 60 (and perhaps even more)

---

[5] Respondents seemingly would have to ask only two questions of each employee: (1) "Did you tell Mr. Hendrick of the memorandum?"; and (2) "Did you tell anyone outside your office of the memorandum?" By successively scheduling the employee depositions 15 minutes apart in one location, respondents could probably finish all the depositions within 1 day and could certainly do so within 2 days.

planning employees was not a reasonable alternative to compelling reporter disclosure. While we make this observation subject to any objection of which we are not aware from the record, it should be recalled that reporter disclosure is to be considered a last resort, especially when the reporter is not a party to the case.

### III

■ The lower court also erred in its analysis of the merit of respondents' claim. As noted above, one of the requirements of *Senear* is that the party seeking discovery show that his or her claim is not frivolous. In considering this requirement the lower court apparently looked solely to respondents' pleadings. This is not the proper test. A party seeking to defeat a claim of reporter's privilege must do more than state a cause of action. The party must show further that he or she can "establish jury issues on the essential elements of [his or her] case not the subject of the contested discovery." *Bruno & Stillman, Inc. v. Globe Newspaper Co., supra* at 597. Hence, a lower court considering a motion to compel reporter disclosure of a confidential source must assure that the party seeking discovery has at least some evidence to support his claim.

This brings to light issues of judicial efficiency and of comity between our superior courts. Where the motion to compel discovery is brought in a court different from that in which the underlying action is pending, two different courts will be required to evaluate the same evidence in the same case. The lower court in this case understandably expressed hesitancy to undertake such duplicative review and thus restricted its review to a superficial evaluation of the pleadings.

■ While the lower court's concern is well taken, its solution is not. Instead, if it was unable to clearly dispose of respondents' motion on some ground other than lack of merit, our change of venue statute should have been used to shift the discovery motion to the same court in which the underlying action was pending. That statute allows a court

"on motion [to] change the place of trial when it appears
. . . [t]hat the convenience of witnesses or the ends of justice would be forwarded by the change". RCW 4.12.030.
Concerns for judicial economy and intercourt comity come
within this criterion. *Cf.* Annot., 74 A.L.R.2d 16, 121–28
(1960) and cases cited therein (crowding of court calendar
justifies change of venue under "ends of justice" provision).

The change of venue statute is applicable to a motion to
compel discovery where a nonparty's claim of reporter's
privilege is involved. While it allows only a change in "the
place of *trial*", it elsewhere refers to "action *or proceeding*".
(Italics ours.) RCW 4.12.030.[6] Our past decisions indicate
that the statute applies to "some incidental types of proceedings" as well as actual trials. 2 L. Orland, Wash. Prac. §
47, at 84 (1972); *see In re McDaniel,* 64 Wn.2d 273, 276,
391 P.2d 191 (1964) (modification of visitation rights);
*State ex rel. Mauerman v. Superior Court,* 44 Wn.2d 828,
830, 271 P.2d 435 (1954) (motion to modify child custody);
*State ex rel. Gamble v. Superior Court,* 190 Wash. 127,
131, 66 P.2d 1135 (1937) (garnishment proceeding); *State
ex rel. Am. Soc'y of Composers v. Wright,* 186 Wash. 194,
196–97, 57 P.2d 323 (1936) (motion to vacate judgment). In
particular, the statute applies to "any proceeding com-

---

[6]The statute provides:

The court may, on motion, in the following cases, change the *place of trial*
when it appears by affidavit, or other satisfactory proof:

(1) That the county designated in the complaint is not the proper county;
or,

(2) That there is reason to believe that an impartial trial cannot be had
therein; or,

(3) That the convenience of witnesses or the ends of justice would be forwarded by the change; or,

(4) That from any cause the judge is disqualified; which disqualification
exists in either of the following cases: In an *action or proceeding* to which he is
a party, or in which he is interested; when he is related to either party by consanguinity or affinity, within the third degree; when he has been of counsel for
either party in the *action or proceeding.*

(Italics ours.) RCW 4.12.030. Since the phrase "place of trial" applies to subsection (4) *as well as the other subsections, it must mean place of "action or proceeding" if the language of the statute is to be construed consistently.*

menced by new and independent process, though arising out of and connected with another action". *Cooper v. Cooper*, 83 Wash. 85, 90, 145 P. 66 (1914). Important criteria are the need for an adversary hearing and the involvement of new parties. *Compare In re Estate of Leslie*, 137 Wash. 20, 22, 241 P. 301 (1925) (guardian's petition for attorney's fees not an independent action because no adversary hearing involved and no new parties brought before court). A motion to compel a nonparty reporter to reveal a confidential source satisfies both these criteria.

This analysis does not conflict with CR 37(a). While that rule does require a motion to compel answers in a deposition to be made in the county where the deposition is taken, it does not necessarily require the motion to be decided in that county. A motion to compel a nonparty reporter to reveal a confidential source is therefore subject to RCW 4.12.030.

The proper procedure, therefore, to be followed in a case such as the present one is as follows. Initially, the court in which discovery is sought (discovery court) may determine whether the threshold requirement of *Senear* is satisfied, *i.e.*, that the reporter's interest in nondisclosure is supported by a need for confidentiality. If this condition is not satisfied, the discovery court should order disclosure. If the threshold requirement is satisfied, however, the discovery court may not order disclosure. If it concludes that the party seeking discovery has not satisfied one of the *Senear* conditions other than merit of the claim, it may deny the motion to compel. If it does not so conclude, however, or concludes that the question is a close one, the discovery court must, on its own motion[7] or that of a party, order a

---

[7]While in general a change of venue requires a motion by a party, courts have inherent power to order a change where necessary for the proper administration of justice. *See, e.g., Everett v. Robersonville*, 8 N.C. App. 219, 224, 174 S.E.2d 116 (1970); *cf. Werner v. Werner*, 84 Wn.2d 360, 371, 526 P.2d 370 (1974) (doctrine of forum non conveniens an inherent discretionary power of the courts). *See generally In re Juvenile Director*, 87 Wn.2d 232, 245–46, 552 P.2d 163 (1976) (noting broad inherent powers of courts).

change of venue to the court in which the underlying action is pending. The latter court, and that court only, is entitled to evaluate the merit of the underlying claim and then, if it finds that the other *Senear* conditions are also satisfied,[8] order disclosure. This is the procedure which should have been followed in the present case and the lower court's failure to do so is an independent basis for our decision.

## IV

The action of the lower court is understandable, as it had the benefit of neither this opinion nor our opinion in *Senear.* Nonetheless, it erred in two respects. First, its conclusion that respondents had no alternative methods of discovering the identity of petitioner's source appears erroneous and, in any event, was not supported by sufficiently specific findings. Second, the lower court erred in concluding that respondents' claim was meritorious solely from a superficial examination of the pleadings. Instead, it should have ordered a change of venue to the court in which the underlying action was pending for a more in–depth evaluation of merit.

The order of the lower court is vacated and the cause remanded for further proceedings consistent with this opinion.

WILLIAMS, C.J., STAFFORD, BRACHTENBACH, DOLLIVER, and DIMMICK, JJ., and CUNNINGHAM and MORGAN, JJ. Pro Tem., concur.

DORE, J. (concurring in the result only)—The majority opinion, from a practical viewpoint, comes close to turning a reporter's limited privilege of nondisclosure into an absolute one. Majority suggestions and statements as

---

[8]The court in which the underlying action is pending should independently consider satisfaction of the other two conditions as well, though it may be guided by the discovery court's analysis. This is because the conditions may often interact and any court ordering disclosure of a confidential source should always keep in mind the option of deferring discovery until it becomes clear that there will never be a feasible alternative.

650

Especially in light of the ease with which depositions could be taken, we see no reason why deposing 60 (and perhaps even more) planning employees was not a reasonable alternative to compelling reporter disclosure.

would put an intolerable financial burden on attorneys and their clients, and inevitably would make justice unavailable to injured parties. (Footnote omitted.) Majority, at 645–46. Getting 60 people together within 2 days, at the same place, and the suggestion in the footnote to limit each deposition to 15 minutes and two questions, seems overly optimistic. Even a veteran attorney might find such a task prohibitive.

Again on what basis do we have the authority to compel a superior court judge having *jurisdiction* of a matter, if he finds that the issue of requiring reporter disclosure is a close one, be mandated

on its own motion or that of a party, [to] order a change of venue to the court in which the underlying action is pending.

(Footnote omitted.) Majority, at 648–49. I don't believe this court has the authority to restrict or prohibit the constitutional powers of a superior court judge in making a decision.[9]