[No. 50192–1.   En Banc.   October 18, 1984.]

THE STATE OF WASHINGTON, *Plaintiff*, v. THEODORE
RINALDO, *Petitioner*, THE EVERETT HERALD,
*Respondent.*

*Mark D. Mestel,* for petitioner.

*Perkins, Coie, Stone, Olsen & Williams,* by *David J. Burman,* for respondent.

*P. Cameron DeVore, Marshall J. Nelson,* and *Francis L. Van Dusen, Jr.,* on behalf of Allied Daily Newspapers and the Society of Professional Journalists, amici curiae for respondent.

DOLLIVER, J.—Petitioner Theodore Rinaldo seeks reversal of the decision of the Court of Appeals which vacated the trial court's discovery order compelling in camera inspection of the files of The Herald (formerly The Everett Herald) which allegedly contain materials useful for his criminal defense. The type and scope of privilege a newspaper and its reporter may have to withhold confidential information from a criminal defendant is at issue.

During the spring and summer of 1979, Herald reporter Gary Larson wrote six articles concerning alleged cult activities at Eden Farms, a 60– to 80–acre farm operated by Rinaldo. In order to obtain information for the articles, Larson promised to keep his sources confidential. Later that summer, Rinaldo was charged with statutory rape, indecent liberties, assault, coercion, and intimidating a witness. He was tried by a jury and found guilty of some of these offenses. About a year later, several witnesses who testified on behalf of Rinaldo contacted the county sheriff

and stated they committed perjury at trial because of Rinaldo's threats. As a result of these recantations, Rinaldo was charged with perjury, intimidating witnesses, tampering with witnesses, and statutory rape.

During the discovery process, counsel for Rinaldo filed a motion for a subpoena duces tecum directing The Herald to disclose all written or recorded materials relating to Rinaldo, Eden Farms, Ellogos (a nonprofit corporation operated by Rinaldo and the part owner of Eden Farms), and 38 past or current members of those two organizations. Alternatively, the motion requested delivery to the Superior Court for an in camera inspection.

In his affidavit in support of this motion, counsel stated his belief that the charges against Rinaldo had stemmed from The Herald's investigation into his "affairs". Counsel also stated the police did not file extensive incident reports of their interviews with witnesses, but that, to the best of counsel's knowledge, a Herald reporter was present when the witnesses were interviewed by law enforcement officials. Counsel concluded the records of The Herald should contain information which could be used to impeach the State's witnesses. Finally, counsel stated he had discussed the matter with a Herald reporter and counsel for The Herald and had been informed the newspaper would not voluntarily release its records.

The Herald moved to quash the subpoena duces tecum on the grounds the information was privileged and not subject to disclosure. The subpoena was subsequently amended to require The Herald to produce any information in its possession potentially favorable to Rinaldo on the issue of guilt or mitigation and all written or recorded statements in its files given by 21 persons who had been named State's witnesses for the upcoming trial.

At the hearing on the motion to quash, defense counsel admitted he had not yet interviewed any witnesses. However, he urged the court to review the material in camera and determine whether it would be helpful to the defense. The trial court, acting prior to our opinion in *Senear v.*

*Daily Journal–American,* 97 Wn.2d 148, 641 P.2d 1180 (1982), held the newspaper had a qualified privilege under the First Amendment. This right, however, had to be balanced against Rinaldo's constitutional right to a fair trial and the right of the public, through the courts, to have the truth ascertained. The trial court ordered the material to be produced for in camera review.

On appeal, Chief Judge Andersen, writing for the majority, held Const. art. 1, § 5 ("[e]very person may freely speak, write and publish on all subjects, being responsible for the abuse of that right") provides newspapers and their reporters with an absolute privilege of nondisclosure of confidences and confidential news sources. *State v. Rinaldo,* 36 Wn. App. 86, 673 P.2d 614 (1983). Judge Durham concurred. She concluded the issue of privilege need not be reached as Rinaldo had failed to meet threshold requirements for in camera review, let alone disclosure. 36 Wn. App. at 102. Judge Ringold dissented, finding a journalist has a qualified common law privilege in a criminal case and Rinaldo had made a sufficient showing to justify in camera review. 36 Wn. App. at 110.

In construing the First Amendment, the federal courts have not discovered an absolute privilege for reporters. In *Branzburg v. Hayes,* 408 U.S. 665, 33 L. Ed. 2d 626, 92 S. Ct. 2646 (1972), the United States Supreme Court held reporters had no First Amendment testimonial privilege to conceal information from a grand jury. *See, e.g., Herbert v. Lando,* 441 U.S. 153, 60 L. Ed. 2d 115, 99 S. Ct. 1635 (1979) (plaintiff suing member of press for defamation not barred from inquiring into editorial processes where inquiry will produce evidence material to proof of a critical element of plaintiff's case). Rather, the courts have used a "balancing test" approach, which pits the news reporter's need for confidentiality against the defendant's right to compulsory process and a fair trial. *United States v. Burke,* 700 F.2d 70, 77 (2d Cir.), *cert. denied,* 104 S. Ct. 72 (1983); *United States v. Cuthbertson,* 651 F.2d 189, 195–96 (3d Cir.), *cert. denied,* 454 U.S. 1056 (1981); *United States v. Pretzinger,*

542 F.2d 517, 520–21 (9th Cir. 1976); *United States v. Blanton,* 534 F. Supp. 295, 296–97 (S.D. Fla. 1982); *United States v. Orsini,* 424 F. Supp. 229, 232 (E.D.N.Y. 1976), *aff'd,* 559 F.2d 1206 (2d Cir.), *cert. denied,* 434 U.S. 997 (1977).

A number of state courts which have considered the privilege in connection with criminal proceedings have interpreted their state constitutions to grant a qualified privilege. *See* Annot., *Privilege of Newsgatherer Against Disclosure of Confidential Sources or Information,* 99 A.L.R.3d 37 (1980); *State ex rel. Green Bay Newspaper Co. v. Circuit Court,* 113 Wis. 2d 411, 335 N.W.2d 367 (1983); *State v. Siel,* 122 N.H. 254, 444 A.2d 499 (1982). *Cf. In re McAuley,* 63 Ohio App. 2d 5, 408 N.E.2d 697 (1979); *In re Farber,* 78 N.J. 259, 394 A.2d 330, 99 A.L.R.3d 1, *cert. denied,* 439 U.S. 997 (1978); *State v. Sandstrom,* 224 Kan. 573, 581 P.2d 812 (1978).

As a general rule, disclosure has been required in criminal cases where it is shown the news reporter's confidential information

> is material to prove an element of the offense, to prove a defense asserted by the defendant, to reduce the classification or gradation of the offense charged, or to mitigate or lessen a sentence imposed.

*McAuley,* 63 Ohio App. 2d at 21; *Sandstrom,* 224 Kan. at 576. Information sought solely to show prior inconsistent statements by a witness has not been disclosed. *Siel,* 122 N.H. at 260.

While Judge Andersen supports absolute privilege with an analysis of state constitutional history, public policy, and a Socratic dialogue (36 Wn. App. at 100 n.18), his position is inapposite to all case law. While admittedly Const. art. 1, § 5 is worded differently than the First Amendment, which prohibits Congress from making any law "abridging the freedom of speech, or of the press", it does not support an absolute privilege for journalists. *Cf. State ex rel. Green Bay Newspaper Co. v. Circuit Court, supra.*

This court has ruled in the civil context that news

reporters have a qualified, common law privilege. *Clampitt v. Thurston Cy.,* 98 Wn.2d 638, 642, 658 P.2d 641 (1983); *Senear v. Daily Journal–American,* 97 Wn.2d 148, 155, 641 P.2d 1180 (1982). The four fundamental conditions necessary to establish such a common law privilege are:

> (1) The communication must originate in a confidence that it will not be disclosed; (2) the element of confidentiality must be essential to the full and satisfactory maintenance of the relation between the parties; (3) the relation must be one which in the opinion of the community ought to be sedulously fostered; and (4) the injury that would inure to the relation by the disclosure of the communication must be greater than the benefit thereby gained for the correct disposal of litigation.

*Senear,* 97 Wn.2d at 153 (quoting *State ex rel. Haugland v. Smythe,* 25 Wn.2d 161, 168, 169 P.2d 706, 165 A.L.R. 1295 (1946)). Only if all four of these conditions are met and the privilege found to exist, are the interests of the particular litigant weighed against the news reporter's interest to determine whether disclosure should be ordered. *Senear,* 97 Wn.2d at 155.

The first three factors are the same in both a civil context and a criminal context. The fourth factor, which requires this court to weigh the interest of allowing the press unfettered access to their sources against the interest in allowing courts and litigants unfettered access to testimony and relevant information, presents more difficulties in criminal prosecutions than in civil actions, *Senear,* 97 Wn.2d at 154. We recognize the defendant's right to a fair trial presents a more compelling interest in favor of disclosure than a civil litigant. *Rinaldo,* 36 Wn. App. at 109 (Ringold, J., dissenting). Although journalists who are parties have little or no privilege, a news reporter, as here, who is not a party to the underlying action, should receive greater protections. *Clampitt,* 98 Wn.2d at 644. We find, as do the vast majority of other courts, the press interest to be sufficiently important to justify a qualified privilege. We extend the qualified privilege in *Senear* to criminal cases.

Since we hold there is a common law qualified privilege in criminal cases, we need not and do not pass on whether such privilege exists under Const. art. 1, § 5. *Senear,* 97 Wn.2d at 152.

■ To defeat the common law qualified privilege for news reporters in a civil or criminal proceeding, the party seeking discovery must show (1) the claim is meritorious; (2) the information sought is necessary or critical to the cause of action or the defense pleaded; and (3) a reasonable effort has been made to acquire the desired information by other means. Finally, the court must also find the interest of the reporter in nondisclosure is supported by a need to preserve confidentiality. *Senear,* 97 Wn.2d at 155–56.

The qualified common law privilege for journalists in civil cases is extended to criminal cases. We affirm the decision of the Court of Appeals vacating the discovery order. Since the rule announced in this case was not before the trial court, this matter is remanded for further proceedings consistent with the views expressed in this opinion.

BRACHTENBACH and PEARSON, JJ., and CUNNINGHAM, J. Pro Tem., concur.

UTTER, J. (concurring)—I concur in the holding of the majority but express no opinion as to whether or not article 1, section 5 of the Washington State Constitution is as limited as the majority suggests. It is unnecessary to reach the constitutional issue inasmuch as the relief requested by respondent may be granted on other grounds. We need not decide the constitutional issue unless the trial court decides the common law privilege does not apply.

ROSELLINI, J. (concurring in part, dissenting in part)—This appeal poses significant issues, the resolution of which will endure long after the underlying criminal case has faded from memory. This court is called upon to assess and determine the delicate balance between the constitutional

rights of a criminal defendant to have a fair trial, encompassing rights of due process and effective assistance of counsel, on the one hand, and the rights of society to be guaranteed the benefits of a free press on the other.

My review of *Branzburg v. Hayes,* 408 U.S. 665, 33 L. Ed. 2d 626, 92 S. Ct. 2646 (1972) convinces me that a majority of the justices on the United States Supreme Court recognized that a reporter has a qualified First Amendment privilege to protect confidential sources. *Branzburg,* at 710 (Powell, J., concurring); *Branzburg,* at 746 (Stewart, J., dissenting). Most courts that have analyzed *Branzburg* have reached the same conclusion. *See, e.g., State v. Siel,* 122 N.H. 254, 259, 444 A.2d 499 (1982); *United States v. Cuthbertson,* 630 F.2d 139, 146 (3d Cir. 1980), *cert. denied,* 449 U.S. 1126 (1981); *State v. Sandstrom,* 224 Kan. 573, 575, 581 P.2d 812 (1978), *cert. denied,* 440 U.S. 929 (1979).

In *Branzburg,* Justice Powell wrote a separate concurring opinion, stating that the

> asserted claim to privilege should be judged on its facts by the striking of a proper balance between freedom of the press and the obligation of all citizens to give relevant testimony with respect to criminal conduct. The balance of these vital constitutional and societal interests on a case–by–case basis accords with the tried and traditional way of adjudicating such questions.

*Branzburg,* at 710 (Powell, J., concurring). Justice Stewart would hold that when a reporter is asked to appear before a grand jury and reveal confidential information, the government must (1) show that there is probable cause to believe that the newsman has information that is clearly relevant to a specific probable violation of law; (2) demonstrate that the information sought cannot be obtained by alternative means less destructive of First Amendment rights; and (3) demonstrate a compelling and overriding interest in the information. *Branzburg,* at 746 (Stewart, J., dissenting).

The concurring opinion of Justice Powell and the dissenting opinion of Justice Stewart have similar overtones,

as both find it necessary to balance the reporter's qualified privilege and Sixth Amendment interests.

In deciding whether a reporter must reveal confidential information in a criminal proceeding, the large majority of courts have applied the balancing test enunciated by Justices Powell and Stewart in *Branzburg.* These include *In re McAuley,* 63 Ohio App. 2d 5, 21, 408 N.E.2d 697 (1979); *Sandstrom,* at 575; *United States v. Pretzinger,* 542 F.2d 517, 520 (9th Cir. 1976); *United States v. Liddy,* 478 F.2d 586, 587 (D.C. Cir. 1972); *United States v. Orsini,* 424 F. Supp. 229, 232 (E.D.N.Y. 1976), *aff'd,* 559 F.2d 1206 (2d Cir.), *cert. denied,* 434 U.S. 997 (1977); *Morgan v. State,* 337 So. 2d 951, 954 (Fla. 1976); *Brown v. Commonwealth,* 214 Va. 755, 757, 204 S.E.2d 429, *cert. denied,* 419 U.S. 966 (1974); *State v. Siel, supra* at 259–60; *Rosato v. Superior Court,* 51 Cal. App. 3d 190, 124 Cal. Rptr. 427 (1975), *cert. denied,* 427 U.S. 912 (1976); *Farr v. Superior Court,* 22 Cal. App. 3d 60, 99 Cal. Rptr. 342 (1971), *cert. denied,* 409 U.S. 1011 (1972).

This state's common law privilege is not unlike the qualified privilege enunciated in the aforementioned decisions. Although the majority indicates that the question of a state constitutional privilege is left open, it, in fact, must have decided the question. In no case can a common law right overcome the defendant's constitutional right to a fair trial. Only when both concerns arise to the level of constitutional magnitude is a balancing of the conflicting rights warranted.

Additionally, the majority must have determined that our constitution does not grant an absolute right. Otherwise, there would be no requirement for a remand of this case for a determination under the qualified privilege.

I would recognize that this state's common law privilege exists under Const. art. 1, § 5. The four fundamental conditions necessary to establish such a privilege are: (1) the communication must originate in a confidence that it will not be disclosed; (2) the element of confidentiality must be essential to the full and satisfactory maintenance of the

relation between the parties; (3) the relation must be one which, in the opinion of the community, ought to be sedulously fostered; and (4) the injury that would inure to the relation by the disclosure of the communication must be greater than the benefit thereby gained for the correct disposal of litigation. *Senear v. Daily Journal–American,* 97 Wn.2d 148, 153, 641 P.2d 1180 (1982) (quoting *State ex rel. Haugland v. Smythe,* 25 Wn.2d 161, 168, 169 P.2d 706, 165 A.L.R. 1295 (1946)).

The privilege is applicable to both criminal and civil proceedings. This privilege, however, is more tenuous in a criminal proceeding than a civil case. *Siel,* at 259; *State v. Sandstrom, supra* at 576. Of the defendant's Sixth Amendment right, the United States Supreme Court has said: "*No right* ranks higher than the right of the accused to a fair trial." (Italics mine.) *Press–Enterprise Co. v. Superior Court,* ___ U.S. ___, 78 L. Ed. 2d 629, 104 S. Ct. 819, 823 (1984). In *United States v. Nixon,* 418 U.S. 683, 713, 41 L. Ed. 2d 1039, 94 S. Ct. 3090 (1974), the United States Supreme Court held that the President's executive privilege, which is of constitutional magnitude, "cannot prevail over the fundamental demands of due process of law in the fair administration of criminal justice." *Nixon,* at 713. The Court held that a *threshold* showing as to the relevance, materiality and necessity of the confidential information warranted an in camera examination. *Nixon,* at 714.

The balance between the constitutional guaranties of a fair trial and the reporter's privilege tips in favor of disclosure where it is shown that the information in the possession of the news reporter is material to prove or disprove an element of the offense, to prove a defense asserted by the defendant, to reduce the classification or gradation of the offense charged, or to mitigate or lessen the sentence imposed. *Sandstrom,* at 576; *Brown,* at 757; *McAuley,* at 21.

Although the majority of this court makes passing reference to these paramount principles, it fails to give the trial judges any guidance in the balancing process required when

confronted with a potential need for disclosure in a criminal proceeding.

For a reporter to seek to invoke the qualified privilege, there must be an initial showing that the person is one to whom the privilege would extend and that he received the information in confidence.[1]

Once a person has demonstrated entitlement to the qualified privilege, a defendant must, if the subpoena is challenged, show there is a *reasonable possibility* that the information sought is relevant and material to the defendant's case. *In re Farber,* 78 N.J. 259, 276, 394 A.2d 330 (1978); *McAuley,* at 21; *Brown,* at 757; *State ex rel. Green Bay Newspaper Co. v. Circuit Court,* 113 Wis. 2d 411, 421–22, 335 N.W.2d 367 (1983). The defendant must also make a showing to the trial court that he has investigated other sources for the kind of information he seeks and there are no reasonable and adequate less intrusive alternative sources where he can obtain the information.

Once the defendant has made this threshold showing, the proper procedure is an in camera inspection which is used to ascertain the actual relevancy and materiality of the subpoenaed material and to further determine whether, and if so, to what extent, the privilege must yield to the defendant's constitutional rights. *Farber,* at 277–78; *Green Bay Newspaper Co.,* at 423; *McAuley,* at 23; *Siel,* at 260. If, after the in camera inspection by the court of the confidential information, there is a reasonable probability that either the reporter or the information will provide relevant evidence concerning defendant's guilt or innocence, the defendant is entitled to the reporter's confidential information or the name of the reporter's informant.

Application of these principles to the instant case indi-

---

[1]It could be argued that, at least as to some of the statements The Everett Herald claims are privileged, the first of the *Senear* requirements is not met. *Senear v. Daily Journal–American,* 97 Wn.2d 148, 153, 641 P.2d 1180 (1982). Some of the requested statements were apparently made in the presence of police officers. These were neither communications *to* the reporter, nor were they made in private.

cates that defendant failed to meet the threshold requirements to compel an in camera inspection. As previously indicated, the privilege applicable to criminal proceedings is not unlike the qualified privilege in civil proceedings, albeit a more tenuous privilege. Defendant, in presenting his case for compelling disclosure, assumed that the threshold criteria of a qualified privilege were applicable and hence was guided by the appropriate standards. Nonetheless, the affidavit in support of the motion to disclose was worded in the broadest possibilities. There was no showing of a *reasonable possibility* that the Herald files contained information relevant and material to defendant's case. Additionally, defendant made no showing that he had investigated other sources for the kind of information sought and that there were no reasonable and adequate, less intrusive alternate sources where he could obtain the information.

Under these circumstances, I conclude that the showing offered by defendant in support of disclosure was wholly inadequate. On such a record, an in camera inspection was not appropriate. I would, therefore, affirm the Court of Appeals quashing of the subpoena and remand for trial.

WILLIAMS, C.J., and DORE, J., concur with ROSELLINI, J.

DIMMICK, J. (concurring in part, dissenting in part)—I agree with the majority that The Herald is entitled to assert a common law qualified journalist's privilege. I do not agree, however, that remand to the trial court is necessary. Petitioner, in presenting his case for compelling disclosure, assumed that the threshold criteria adopted by the court today were applicable. He was not able to show that he could defeat a legitimately claimed journalist's privilege. His affidavit broadly speculated, without citing specifics, that information needed for the defense was being held by the newspaper. Further, he did not demonstrate that the newspaper had unique access to that information. On such a record, the trial court could not order disclosure; thus, an

in camera inspection was not appropriate. By remanding and inferentially permitting petitioner to restate his case under the "new" rule, the majority merely gives him a second opportunity to prove his case, even though he initially failed. The ultimate result is further needless delay of petitioner's trial on the criminal charges. I would, therefore, affirm the Court of Appeals quashing of the subpoena and remanding for trial.