[No. 56214-8. En Banc. February 22, 1990.]

RICHARD W. SNEDIGAR, *Respondent*, v. GUERRY HODDERSEN,[†] ET AL, *Petitioners.*

---

[†]The petitioner Guerry Hoddersen signed her affidavit presented to this court "Hoddersen" whereas the Court of Appeals spelled the name "Hodderson". We have used the spelling used by petitioner herself.

*Clara Fraser,* pro se, *Valerie A. Carlson, Frederick W. Hyde, Jr.,* and *Daniel Hoyt Smith* (*Leonard B. Boudin* and *Rabinowitz, Boudin, Standard, Krinsky & Lieberman,* of counsel), for petitioners.

*Thomas S. Wampold* and *Michelle L. Pailthorp,* for respondent.

*Paul Parker* and *Janet Varon* on behalf of National Lawyers Guild; *Michael W. Gendler* on behalf of the American Civil Liberties Union, amici curiae for petitioners.

ANDERSEN, J.—

## FACTS OF CASE

At issue in this case is the constitutionality of a discovery order requiring a political organization to disclose minutes of some of its meetings.

The principal defendant in this case is the Freedom Socialist Party (hereafter referred to as the Party). To use the Party's own description of itself, it is a socialist feminist national political party engaged in organizing for the rights of women, unionists, racial minorities, lesbians and gays, and for the civil liberties of political dissenters. The Party was founded in Seattle in 1966. Richard W. Snedigar, the plaintiff herein, was an active member of the Party from 1974 to 1980. During that period, the Party rented its headquarters in Freeway Hall from Ivar Haglund. In November 1978, Haglund served the Party with an eviction notice. The Party declared an emergency and began soliciting funds in order to buy or rent a new building. In response, plaintiff refinanced his home and contributed $22,500. This was in June of 1979. By letter, the Party thanked him for contributing to the "Emergency Eviction Fund." Plaintiff also helped in the search for a new headquarters. The Party was able to negotiate lease extensions and did not relocate until July 1985.

Plaintiff resigned from the Party in September 1980, largely because no new hall had yet been purchased with the eviction fund. In 1981, plaintiff asked a party member to return his $22,500 donation, but was told that such a refund was out of the question. In a letter dated July 12, 1983, plaintiff demanded that his money be returned. The Party refused the demand.

Plaintiff filed a complaint for damages against the Party and 10 of its members on January 16, 1984. The Party denied plaintiff's claims and filed counterclaims. The Party then moved for summary judgment. The trial court granted the Party's motion for summary judgment on two causes of action, but did not dismiss plaintiff's claims for breach of

contract, void contract, misrepresentation, conditional gift, undue influence and constructive trust.

The plaintiff embarked on a course of pretrial discovery in accordance with the Superior Court Civil Rules. In March of 1985, plaintiff moved for an order compelling discovery. The trial court granted his motion, with the proviso that names of Party members and contributors need not be disclosed. Plaintiff then moved to compel compliance with this order. The trial court granted the motion and ordered the Party to produce all information previously requested and requested in the future.

The Court of Appeals granted discretionary review of the order and ultimately held that it was overly broad. The Court of Appeals remanded the case to the trial court and directed it to weigh plaintiff's need for information against the harm claimed by the Party. The trial court also was directed to conduct in camera hearings, if necessary, and to issue any appropriate protective orders.

After remand, in October of 1985, plaintiff requested the production of minutes of Party meetings having to do with the finding, location and search for an alternate to Freeway Hall as well as all minutes referring to the emergency. When the Party objected to these requests as unconstitutional infringements upon its rights of association, privacy and free speech, plaintiff moved to compel the Party to comply with his requests. The trial court granted the motion, and ordered the Party to produce the minutes with members' names deleted or submit them to the court for an in camera hearing. Both this court and the Court of Appeals denied discretionary review of that order.

The Party refused to comply with the order on constitutional grounds. On plaintiff's motion for sanctions, the trial court imposed an order of default against the Party and dismissed its counterclaims. Then later, following an evidentiary hearing, the trial court entered a default judgment against the Party.

The Party appealed to the Court of Appeals, challenging the discovery order and the trial court's refusal to grant

summary judgment as to all of plaintiff's claims. In a published opinion, the Court of Appeals affirmed the partial summary judgment and discovery orders, but vacated the default order and directed the trial court to reconsider whether the sanctions of default and dismissal were necessary.[1] The Party then sought discretionary review in this court of the Court of Appeals analysis regarding the discovery and default orders.

We are here presented with two issues.

## ISSUES

ISSUE ONE. Did the Court of Appeals correctly evaluate the parties' competing interests in assessing the constitutionality of the discovery order?

ISSUE TWO. Did the Court of Appeals err by remanding the default judgment to the Superior Court for reconsideration rather than reversing it outright?

## DECISION

ISSUE ONE.

CONCLUSION. The Court of Appeals properly held that once an association resisting discovery has shown that disclosure of associational materials would infringe on its First Amendment rights, the party seeking discovery must establish the relevancy and materiality of the information sought, and show that there are no reasonable alternative sources for the information. If this burden is met, the trial court must balance the competing interests. It is our view, however, that the Court of Appeals was not correct when it required an initial showing of *actual* infringement on First Amendment rights. The party asserting the First Amendment associational privilege is only required to show *some probability* that the requested disclosure will harm its First Amendment rights.

CR 26, which contains general provisions governing discovery in civil cases, provides that parties may not obtain

---

[1]*Snedigar v. Hodderson,* 53 Wn. App. 476, 488, 768 P.2d 1 (1989).

discovery of privileged information.[2] While a First Amendment associational privilege to discovery requests does exist, that privilege is not absolute.[3] Under some circumstances, disclosure of associational information may permissibly be compelled.[4]

Courts generally hold that to assert an associational privilege, a party must show that its First Amendment rights will be chilled by the requested disclosure.[5] If such a showing is made, the court must then balance this First Amendment claim against the opposing party's need for the information sought.[6]

The analytical framework set forth by the Court of Appeals in its opinion is consistent with this analysis. The court held that once the party resisting discovery has shown that disclosure would infringe on its First Amendment rights, the party seeking discovery must establish the relevancy and materiality of the information sought, and make a showing that reasonable efforts to obtain the information elsewhere have been unsuccessful. If this burden is met, the trial court must then balance the parties' competing claims of privilege and need, perhaps via an in camera examination of the requested information.[7] In adopting this framework, the Court of Appeals relied on federal case law and on this court's analysis in *State v. Rinaldo,* 102

---

[2]CR 26(b)(1); 4 L. Orland, Wash. Prac., *Rules Practice* § 5305 (3d ed. 1983).

[3]*See Wilkinson v. FBI,* 111 F.R.D. 432, 436 (C.D. Cal. 1986); *Britt v. Superior Court,* 20 Cal. 3d 844, 855, 574 P.2d 766, 143 Cal. Rptr. 695 (1978).

[4]*Britt,* at 855 (citing *Buckley v. Valeo,* 424 U.S. 1, 66–68, 46 L. Ed. 2d 659, 96 S. Ct. 612 (1976)).

[5]*See Wilkinson,* at 437; *Black Panther Party v. Smith,* 661 F.2d 1243, 1267 (D.C. Cir. 1981), *vacated mem. sub nom. Moore v. Black Panther Party,* 458 U.S. 1118 (1982) (mootness); *Adolph Coors Co. v. Wallace,* 570 F. Supp. 202, 210 (N.D. Cal. 1983).

[6]*Black Panther Party,* at 1266; *Coors,* at 208.

[7]*Snedigar,* at 483.

Wn.2d 749, 689 P.2d 392 (1984) and *Senear v. Daily Journal–American,* 97 Wn.2d 148, 641 P.2d 1180 (1982). *Rinaldo* and *Senear* held that to defeat the qualified privilege for news reporters in a civil or criminal proceeding, the party seeking discovery must show (1) the claim is meritorious; (2) the information sought is necessary to the cause of action pleaded; and (3) a reasonable effort has been made to acquire the desired information by other means.[8]

The Party's principal complaint in this court is with the Court of Appeals' articulation of the threshold showing required to successfully assert an associational privilege. The Court of Appeals held that the party asserting the privilege must show that disclosure would *in fact* impinge on First Amendment rights.[9] As support for such a strong threshold showing, that court cited *Wilkinson v. FBI,* 111 F.R.D. 432 (C.D. Cal. 1986).

In *Wilkinson,* a civil rights activist sought to use the associational privilege as a blanket bar to discovery of some 240 boxes of documents, tapes and microfilm.[10] The federal trial court held that, as a threshold matter, the activist had not shown that the privilege should apply. In other cases applying the privilege, the challenged discovery was a specific request for membership or contributor lists. "In no case cited by [the activist] has the Court applied the privilege to a general discovery request such as the one at issue. . . . The litigant must, at least, make some showing that the information sought would impair the group's associational activities."[11] We do not read the *Wilkinson* requirement of "some showing" as direct support for the

---

[8]*State v. Rinaldo,* 102 Wn.2d 749, 755, 689 P.2d 392 (1984); *Senear v. Daily Journal–American,* 97 Wn.2d 148, 155–56, 641 P.2d 1180 (1982).

[9]*Snedigar,* at 483.

[10]*Wilkinson,* at 436.

[11]*Wilkinson,* at 437.

requirement of the Court of Appeals that there be a showing of "infringement in fact" on associational activities.

The Court of Appeals also cited *Buckley v. Valeo,* 424 U.S. 1, 46 L. Ed. 2d 659, 96 S. Ct. 612 (1976), as support for its requirement of infringement in fact. In *Buckley,* the United States Supreme Court discussed whether minor political parties should be exempt from the disclosure requirements of the Federal Election Campaign Act of 1971. The minor parties in *Buckley* argued that the act's requirements would cause a significant infringement of their First Amendment rights.[12] The Supreme Court disagreed, observing that any serious infringement upon First Amendment rights caused by the compelled disclosure of contributors was highly speculative. The showing of infringement in *Buckley* consisted only of the testimony of some minor party officials that one or two persons refused to make contributions because of the possibility of disclosure. "On this record, the substantial public interest in disclosure identified by the legislative history of this Act outweighs the harm generally alleged."[13] The Court went on to hold that a party could be exempted from the act, however, if it showed "a reasonable probability that the compelled disclosure of a party's contributors' names will subject them to threats, harassment, or reprisals from either Government officials or private parties."[14]

This is the language which the Court of Appeals cited as support for its requirement of the very strong threshold showing of First Amendment infringement in the present case.[15] The *Buckley* Court did not refuse at the outset, however, to weigh a speculative claim of harm against the need for the information. Rather, it held that a speculative

[12]*Buckley,* at 69.

[13]*Buckley,* at 72.

[14]*Buckley,* at 74.

[15]*Snedigar,* at 483.

claim would be defeated by a strong need for the requested information and that a stronger claim might exempt a party from the act and thus defeat the interest in disclosure.

■ Other decisions are more explicit in stating that a concrete showing of "chill" is unnecessary in cases dealing with an association's claim of First Amendment privilege. Several decisions emphasize that a factual showing of actual chilling effect is not a necessity for a decision forbidding disclosure, though such a showing does weigh in the balance on the side of First Amendment values.[16] The District of Columbia Circuit Court of Appeals described the threshold requirement in this manner: "the litigant seeking protection need not prove to a certainty that its First Amendment rights will be chilled by disclosure. *It need only show that there is some probability that disclosure will lead to reprisal or harassment.*" (Italics ours.)[17] The California Supreme Court suggested an even lesser threshold showing by stating that private association affiliations and activities are presumptively immune from disclosure and that the government bears the burden of justifying compelled disclosure.[18]

Other courts have overlooked the absence of a factual record of past harassment and, using what can perhaps best be referred to as a commonsense approach, have assumed that disclosure of information will chill an association's First Amendment rights. *See Local 814, Int'l Longshoremen's Ass'n v. Waterfront Comm'n,* 667 F.2d 267, 272 (2d Cir. 1981) (court assumed chilling effect from disclosure to Waterfront Commission of the names of contributors to the

---

[16]*Australia/Eastern U.S.A. Shipping Conference v. United States,* 537 F. Supp. 807, 811 (D.D.C. 1982); *see also Black Panther Party,* at 1267–68; *Community–Serv. Broadcasting of Mid–America, Inc. v. FCC,* 593 F.2d 1102, 1118 (D.C. Cir. 1978).

[17]*Black Panther Party,* at 1267–68.

[18]*Britt,* at 855; *see also Bursey v. United States,* 466 F.2d 1059, 1082 (9th Cir. 1972).

longshoremen's political action committee); *Pollard v. Roberts,* 283 F. Supp. 248, 258 (E.D. Ark.) ("naive" not to recognize that in Arkansas disclosure of contributors to the state Republican Party would discourage the exercise of constitutional rights given the party's unpopularity), *aff'd,* 393 U.S. 14 (1968); *Shelton v. Tucker,* 364 U.S. 479, 485–86, 5 L. Ed. 2d 231, 81 S. Ct. 247 (1960) (chilling effect inevitable if teachers who served at the will of school board had to disclose all organizations to which they belonged); and *Talley v. California,* 362 U.S. 60, 64, 4 L. Ed. 2d 559, 80 S. Ct. 536 (1960) (ordinance requiring names and addresses on all distributed handbills was unconstitutional because of its obvious tendency to restrict freedom of expression).

Thus, we conclude in this case that the Court of Appeals erred in requiring the Party to show that disclosure of the information requested would *in fact* impinge on its First Amendment rights. Given the great importance of these rights, it is preferable to weigh whatever claims of chilling effect are made against the need for disclosure. Under this approach, the Party's allegations of harm in this case constitute a sufficient threshold showing of impingement on its First Amendment rights. Guerry Hoddersen, the Party's national secretary, filed two affidavits with the trial court challenging its discovery order. In the first, she stated that Party members and supporters had been subjected to acts of reprisal and harassment in the past.

> In order to protect members and supporters from this kind of harassment, it has long been an established practice of the FSP to staunchly defend against all unconstitutional attempts by government agencies, employers or private parties to compel disclosure of the names of persons who associate with the FSP. . . . If we could not assure members, contributors, and business associates of this associational privacy, our political activities would be severely damaged by the resulting increased fear of harassment and reprisals.

In the second affidavit, she stated that the expectation of confidentiality in internal discussions is essential to the Party's survival.

> If people could not trust the party to keep their deliberations private, they would censor themselves and refrain from raising criticisms rather than have them turned over to political opponents, made public, or disclosed to the courts. Furthermore, other organizations would be loathe to associate with, and share information with, a party whose minutes are open to the public or the courts.

Officers of four other organizations filed affidavits describing how their groups would be harmed by disclosure of their meeting minutes.

■ These affidavits are sufficient to meet the lesser threshold showing described in *Buckley* and the other cases discussed above. We need not consider, therefore, the more numerous and specific claims of harm contained in a third affidavit the Party submitted to the Court of Appeals with its motion for reconsideration. The Court of Appeals properly declined to consider that affidavit because a record on appeal may not be supplemented by material which has not been included in the trial court record.[19]

■ Having decided that a party need demonstrate only *some probability* that its First Amendment rights will be harmed by disclosure in order to make a successful threshold showing of associational privilege, we turn to the rest of the balancing test involved in assessing a discovery request for associational information. As the Court of Appeals correctly observed, once a threshold showing of privilege is made, the burden shifts to the party seeking discovery to establish the relevancy and materiality of the information sought, and to make a showing that reasonable efforts to obtain the information by other means have been unsuccessful.[20]

---

[19]*LaMon v. Butler,* 112 Wn.2d 193, 199 n.4, 770 P.2d 1027 (1989); *State v. Murphy,* 35 Wn. App. 658, 662, 669 P.2d 891 (1983).

[20]*Snedigar v. Hodderson,* 53 Wn. App. 476, 483, 768 P.2d 1 (1980). *See also Wilkinson v. FBI,* 111 F.R.D. 432, 436 (C.D. Cal. 1986); *Adolph Coors Co. v. Wallace,* 570 F. Supp. 202, 208 (N.D. Cal. 1983); *Black Panther Party v. Smith,* 661 F.2d 1243, 1267 (D.C. Cir. 1981), *vacated mem. sub nom. Moore v. Black Panther Party,* 458 U.S. 1118 (1982) (mootness).

With regard to relevancy, the interest in disclosure will be regarded as relatively weak unless the information goes to the "heart of the matter", or is crucial to the case of litigant seeking discovery.[21] As the District of Columbia Circuit Court of Appeals has pointed out:

> Mere speculation that information might be useful will not suffice; litigants seeking to compel discovery must describe the information they hope to obtain and its importance to their case with a reasonable degree of specificity.

*Black Panther Party v. Smith,* 661 F.2d 1243, 1268 (D.C. Cir. 1981), *vacated mem. sub nom. Moore v. Black Panther Party,* 458 U.S. 1118 (1982) (mootness).[22] The litigant seeking disclosure also must show that efforts have been made to obtain the information by other means. "Even when the information sought is crucial to a litigant's case, disclosure should be compelled only after the litigant has shown that he has exhausted every reasonable alternative source of information."[23] Such a showing, therefore, must be reasonably explicit. This court remanded a case so that the trial court could list the alternative sources it had considered and rejected in *Clampitt v. Thurston Cy.,* 98 Wn.2d 638, 658 P.2d 641 (1983). *Clampitt* concerned a party's attempt to defeat a reporter's qualified privilege. The trial court's general statement that the information was not otherwise available was held insufficient to show that alternative sources had been exhausted.[24]

    In the proper case, this court can determine whether or not a plaintiff has met the burden of showing relevancy and a lack of alternative sources, but in this case the record before us is not entirely clear on these matters. Accordingly, it is necessary to remand the case to the trial court so that the plaintiff may have an opportunity to make this

---

[21]*Black Panther Party,* at 1268; *Coors,* at 208.

[22]*See also Coors,* at 208.

[23]*Black Panther Party,* at 1268. *See also Wilkinson,* at 436.

[24]*Clampitt v. Thurston Cy.,* 98 Wn.2d 638, 644–45, 658 P.2d 641 (1983).

showing. If plaintiff succeeds in showing that the desired information is relevant and unavailable from other sources, the trial court must balance plaintiff's need for the information against the Party's claim of privilege and determine which is the strongest. If *clearly* necessary, the trial court may make this decision following an in camera inspection of the requested information. Such review was one option described in the discovery order at issue, and the Court of Appeals approved of in camera review to enable the trial court to better ascertain the strength of the parties' competing claims, and to decide whether, and to what extent, discovery of the requested materials is appropriate.[25]

The Party challenges this aspect of the decision of the Court of Appeals on the grounds that an in camera review of associational materials violates the First Amendment. The Party asserts that if a litigant makes a claim of associational privilege, the allegedly privileged material may not be subjected to an in camera inspection. The Party's assertion in this regard cannot be sustained under the current state of our case law.[26] The United States Supreme Court recently held that disclosing allegedly privileged materials to a court to determine the merits of a claim of privilege does not terminate the privilege. "Indeed, this Court has approved the practice of requiring parties who seek to avoid disclosure of documents to make the documents available for *in camera* inspection . . .".[27] The First Circuit Court of Appeals also recently upheld the use of in camera inspections where a qualified privilege is asserted.[28] That court regarded in camera review of the documents in

---

[25]*Snedigar*, at 483.

[26]*Cf. State v. Rinaldo*, 36 Wn. App. 86, 673 P.2d 614 (1983) (lead opinion of Andersen, C.J.), *aff'd on other grounds*, 102 Wn.2d 749, 689 P.2d 392 (1984).

[27]*United States v. Zolin*, ___ U.S. ___, 105 L. Ed. 2d 469, 109 S. Ct. 2619, 2629 (1989).

[28]*Association for Reduction of Violence v. Hall*, 734 F.2d 63, 66 (1st Cir. 1984).

question as "'. . . a relatively costless and eminently worthwhile method to insure that the balance between [one party's] claims of irrelevance and privilege and [the other's] asserted need for the documents is correctly struck.'"[29]

Generally, Washington courts have similarly upheld in camera review as "a generally acknowledged device for determining whether a privilege is to be honored."[30] There is thus no support in the current case law for the contention that a litigant alone can decide that certain materials are privileged and not subject to disclosure. We point out in this connection, however, that in camera review of associational materials is *not* a course to be routinely undertaken in a First Amendment case, but is justifiable *only* if essential to fairly evaluate the competing interests at stake.

█ The Party also claims that the Court of Appeals erred in failing to hold that the Constitution of the State of Washington protects its minutes from disclosure.[31] In its brief filed in the Court of Appeals, the Party briefly discussed three of the six *Gunwall*[32] criteria we use in deciding whether an issue should be resolved on state constitutional grounds. In the Party's petition seeking review in this court, there was no state constitutional analysis whatsoever. We recall initially this court's earlier holding in *Rhinehart v. Seattle Times Co.,* 98 Wn.2d 226, 257, 654 P.2d 673 (1982), *aff'd,* 467 U.S. 20, 81 L. Ed. 2d 17, 104 S. Ct. 2199 (1984) that a discovery order did not violate rights of privacy and association guaranteed by our state

---

[29]*Hall,* at 66 (quoting *Kerr v. United States Dist. Court,* 426 U.S. 394, 405, 48 L. Ed. 2d 725, 96 S. Ct. 2119 (1977)).

[30]*State v. Allen,* 27 Wn. App. 41, 46, 615 P.2d 526 (1980); *see also Barfield v. Seattle,* 100 Wn.2d 878, 883, 676 P.2d 438 (1984); *Cook v. King Cy.,* 9 Wn. App. 50, 54, 510 P.2d 659 (1973).

[31]*See* Const. art. 1, §§ 4, 5 and 7.

[32]*State v. Gunwall,* 106 Wn.2d 54, 58, 720 P.2d 808 (1986). *See also State v. Schaaf,* 109 Wn.2d 1, 13, 743 P.2d 240 (1987).

constitution. We decline to further analyze the state constitution in this case, however, because the Party did not adequately brief or argue its suggested grounds for independent state constitutional review.[33]

Accordingly, we uphold the constitutionality of the trial court's discovery order, but with the important proviso that the plaintiff's discovery request must be analyzed pursuant to the balancing test just described. The Party has successfully established a threshold claim of associational privilege. It follows, that if—and only if—the plaintiff is successful in making the required showing of relevancy and a lack of alternative sources of information, the trial court must balance the parties' competing interests in order to determine whether the order should be enforced.

ISSUE TWO.

■ CONCLUSION. Given our foregoing holding as to the discovery order with which the Party refused to comply, the default judgment against the Party must be vacated and set aside. The Party's assertion of a First Amendment associational privilege was not without merit. Thus, we do not in this case consider the Party's refusal to obey the discovery order as willful, or without reasonable excuse; therefore, the sanction of a default judgment was not in order.

At the initial hearing on the default order, the trial court very reasonably gave the Party 20 days within which to comply with the discovery order before holding a second hearing on the order of default. When the Party did not comply within that 20–day period, the court entered the order of default. The Court of Appeals held that the trial court should have stated on the record the reasons for its choice of sanctions as well as whether lesser sanctions would have sufficed.[34] Furthermore, the trial court also should have stated whether or not the refusal prejudiced

---

[33]*State v. Wethered,* 110 Wn.2d 466, 472, 755 P.2d 797 (1988); *State v. Worrell,* 111 Wn.2d 537, 539 n.1, 761 P.2d 56 (1988).

[34]*Snedigar v. Hodderson,* 53 Wn. App. 476, 487, 768 P.2d 1 (1989).

plaintiff's case. The Court of Appeals thus reversed the order of default and dismissal and remanded to the trial court for consideration of these factors on the record.[35]

■ Default is one of the sanctions that a trial court may impose for failure to comply with a discovery order.[36] The remedy for a party's failure to comply with discovery lies within the sound exercise of the trial court's discretion.[37] The Court of Appeals correctly observed, however, that the sanction of a default judgment should be granted only where there has been a willful or deliberate refusal to obey a discovery order which substantially prejudices the opponent's ability to prepare for trial.[38] A violation of the discovery rules is willful if done without a reasonable excuse.[39] The Court of Appeals declared that willfulness was clearly present in the Party's deliberate refusal to comply with the discovery order.[40] The court could not determine from the record, however, whether the factor of prejudice to plaintiff was present.[41]

Given our resolution of Issue One and the potential validity of the Party's assertion that the requested information is protected from disclosure by an associational

---

[35]*Snedigar*, at 488.

[36]CR 37(b)(2)(c).

[37]*Rhinehart v. Seattle Times Co.*, 51 Wn. App. 561, 574, 754 P.2d 1243 (1988), *cert. denied*, 109 S. Ct. 1736, *reh'g denied*, 109 S. Ct. 2459 (1989); *Rhinehart v. KIRO, Inc.*, 44 Wn. App. 707, 710, 723 P.2d 22 (1986), *review denied*, 108 Wn.2d 1008, *appeal dismissed sub nom. Rhinehart v. Tribune Pub'g Co.*, 484 U.S. 805 (1987).

[38]*Associated Mortgage Investors v. G.P. Kent Constr. Co.*, 15 Wn. App. 223, 228–29, 548 P.2d 558, *review denied*, 87 Wn.2d 1006 (1976), *cited in Rhinehart*, 51 Wn. App. at 574.

[39]*Rhinehart*, 51 Wn. App. at 577 (citing *Taylor v. Cessna Aircraft Co.*, 39 Wn. App. 828, 836, 696 P.2d 28, *review denied*, 103 Wn.2d 1040 (1985)).

[40]*Snedigar*, at 487 n.4.

[41]*Snedigar*, at 488.

privilege, we are unable to find that either willfulness or prejudice is present in this case at this time. We thus reverse the current order of default. If, after undertaking the analysis we outlined in connection with Issue One herein, the trial court enforces the discovery order and the Party again refuses to comply, the trial court should make clear on the record whether the factors of willfulness and prejudice are present before considering entry of a default order. The trial court also should state whether lesser sanctions would be effective and why it is imposing an order of default. As the Court of Appeals observed, these steps are routinely followed by the federal courts and should be employed by Washington courts when dismissal is imposed as a sanction for violating a discovery order in a First Amendment case.[42]

The Court of Appeals is affirmed in part and reversed in part; the case is remanded to the trial court[43] for future proceedings consistent with this opinion.

CALLOW, C.J., UTTER, BRACHTENBACH, DOLLIVER, DURHAM, and SMITH, JJ., and MITCHELL, J. Pro Tem., concur.

DORE, J., concurs in the result.

---

[42] *See In re MacMeekin*, 722 F.2d 32, 35–36 (3d Cir. 1983); *Quality Prefabrication, Inc. v. Daniel J. Keating Co.*, 675 F.2d 77, 81 (3d Cir. 1982).

[43] We also concur in a concluding footnote added by the Court of Appeals urging that this matter be assigned to one judge who will maintain jurisdiction until proceedings are complete in the Superior Court. *See Snedigar*, at 488 n.7.