[No. 11861-4-III.   Division Three.   December 28, 1993.]

RCL NORTHWEST, INC., ET AL, *Respondents,* v. COLORADO RESOURCES, INC., ET AL, *Appellants.*

*Alex Wayne Bolt,* pro se.

*Philip J. Van de Veer* and *Evans, Craven & Lackie, P.S.,* for respondents.

SWEENEY, J. — Alex Wayne Bolt challenges the entry of a default judgment as a sanction for his failure to comply with an order of discovery. He contends the default judgment (1) is void because RCL Northwest, Inc.,[1] did not file the long-arm statute affidavit required by RCW 4.28.185(4)[2] prior to the entry of the default judgment; (2) is void because RCL did not verify the shareholder derivative complaint; (3) is too harsh a sanction for the failure to comply with discovery; and (4) should be vacated because it was obtained by fraud. We find no error and affirm.

## FACTUAL BACKGROUND

Colorado Resources, Inc. (CRI) is a Washington corporation engaged in the business of mining exploration and development. Mr. Bolt, the corporate president of CRI, owns a majority interest in CRI, in addition to his interest in Alaska Drilling Company and two Alaska limited partnerships: White Mountain Mining Partners and Nebesna Mining Partners. White Mountain and Nebesna own two patented mining claims in Alaska — the White Mountain and Rambler claims.

---

[1] RCL Northwest, Inc., and the other respondents in this appeal are shareholders of Colorado Resources, Inc., and hereafter will be referred to as RCL.

[2] That statute provides:
"Personal service outside the state shall be valid only when an affidavit is made and filed to the effect that service cannot be made within the state."

In 1986, CRI obtained an option to participate in White Mountain's right to mine gold. CRI terminated the option in 1988 and took an assignment of the underlying lease agreement in return for stock and cash. RCL thereafter promoted the mines and arranged financing. Without shareholder approval, Mr. Bolt assigned CRI's interest in the claims to Newmont Exploration Limited in return for Newmont's promise to pay CRI certain royalties. Newmont paid CRI approximately $190,000.

## PROCEDURAL HISTORY

On April 6, 1989, CRI's shareholders filed a petition for a writ of mandamus, alleging that CRI had not accounted for $740,000 that it had received since 1987. The petition requested an order compelling discovery of certain corporate documents. Service of process was effected on Mr. Bolt in Alaska on April 7, 1989. Mr. Bolt refused to permit inspection of CRI's books and records. RCL moved for an order of contempt. The court entered an order requiring Mr. Bolt to furnish receipts for CRI's expenditures. Mr. Bolt refused to comply.

On June 9, an amended "Petition/Complaint for Accounting, Injunction and Damages Shareholder Derivative Action" was filed. The complaint, which was not verified, alleged Mr. Bolt had breached his fiduciary duties and had violated both the Consumer Protection Act (RCW 19.86) and the Federal Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. § 1961). Service of process was effected on Mr. Bolt in Alaska on June 10.

On August 3, RCL served Mr. Bolt with interrogatories and requests for production. Mr. Bolt did not respond and requested additional time to answer. On September 11, he filed CRI's voluntary petition for protection under chapter 7 of the United States Bankruptcy Code in Alaska. At the first meeting of creditors, Mr. Bolt promised to provide the books and records of Alaska Drilling and the White Mountain and Nebesna partnerships. He failed to do so. In his answer to the shareholder derivative complaint, Mr. Bolt alleged that

the derivative claims were automatically stayed by the filing of the bankruptcy petition. Despite numerous motions by RCL, the shareholder derivative action was stayed by the Alaska bankruptcy court until October 22, 1990.

On November 2, 1990, RCL moved to compel discovery pursuant to CR 37. On December 4, the court granted the motion. A copy of the order was mailed to Mr. Bolt on December 5.

On January 4, 1991, RCL moved for an order of default, contempt and sanctions pursuant to CR 37(b)(2);[3] Mr. Bolt was notified by certified mail. RCL alleged that Mr. Bolt had willfully failed to comply with the court's December 4, 1990, order. The order of default was entered on February 1, 1991, providing in part:

> 3. The documents ordered provided by the Court are essential to plaintiffs' case and plaintiffs are substantially prejudiced by failure to provide discovery documents.
> 4. Defendant Bolt's failure to provide discovery constitutes a willful and deliberate disregard of this Court's orders.
> 5. Other lesser sanctions would not cure the improper behavior or advance the deterrent aspects of CR 37.

A copy of the order of default was mailed to Mr. Bolt on February 5. Again, Mr. Bolt did not respond or appear.

Following a hearing on damages, a default judgment was entered on February 20 pursuant to CR 37. RCL was awarded $639,732.30, which included the principal sum of $481,330.64, interest of $97,068.35 and attorney fees of $61,333.31.

On June 6, Mr. Bolt moved to vacate the judgment. He argued that the court did not have jurisdiction to enter the default judgment because RCL had failed to file an affidavit

---

[3]CR 37(b)(2) states:

"(2) If a party . . . fails to obey an order to provide or permit discovery, . . . the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:

". . . .

"(C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceedings or any part thereof, or *rendering a judgment by default against the disobedient party*;" (Italics ours.)

justifying the use of extraterritorial service of process as required by RCW 4.28.185(4). He also maintained that dismissal was required because RCL had failed to verify the shareholder derivative complaint. CR 23.1. RCL filed the required long-arm affidavit on June 14.

At a hearing on June 19, the court noted that "Mr. Bolt has drug his heels on this matter for whatever reason. He's failed to comply with legitimate court orders, failed to comply with reasonable discovery and requests for production of documents." Despite Mr. Bolt's recalcitrance, the court granted his motion to set aside the default because the motion had been brought within a relatively short time after the judgment and there had been no prejudice to RCL.

The complaint for the shareholder derivative action was verified on July 12. On August 16, the order vacating the judgment was entered. It provided that the default judgment should be vacated "upon the conditions that defendant ALEX WAYNE BOLT provide Court ordered discovery, pay plaintiffs' attorney's fees in obtaining that discovery, and provide a current address." Mr. Bolt was ordered to comply with the discovery order within 20 days. The order provided that the "[f]ailure to comply with the terms of this Order will result in affirmation of the Judgment against ALEX WAYNE BOLT and/or modification of that Judgment."

On August 29, Mr. Bolt moved for a protective order regarding discovery. He alleged that RCL's discovery demands were malicious and burdensome and that he had made serious efforts to comply. In response to Mr. Bolt's motion, the court set a document production schedule, but provided that: "If the time frames outlined by this Order are not met . . . the judgment entered against Alex Wayne Bolt on February 20, 1991, shall be reaffirmed." Mr. Bolt did not comply with the production schedule and he now appeals.[4]

---

[4]Counsel for Mr. Bolt withdrew on October 30, 1992, after the matter had been briefed but prior to oral argument. Mr. Bolt did not appear at the September 7, 1993, oral argument. We therefore review Mr. Bolt's position as argued in his brief. RAP 11.4(e).

### FILING OF LONG-ARM STATUTE AFFIDAVIT

Mr. Bolt contends RCW 4.28.185(4) required the long-arm statute affidavit to be filed prior to the entry of the default judgment. He concludes that the February 20, 1991, default judgment should be dismissed because the required affidavit was not filed until June 14.

The validity of out-of-state service is conditioned on the filing of an affidavit that service cannot be made within the state. RCW 4.28.185(4). "[J]urisdiction over a person who is not within the state by service outside the state is of purely statutory creation and is in derogation of the common law". *Hatch v. Princess Louise Corp.*, 13 Wn. App. 378, 379, 534 P.2d 1036 (1975). The statute authorizing such service is to be strictly pursued. *Hatch*, at 379.

Mr. Bolt's argument is not persuasive. He ignores the fact that on August 16, 1991, the court set aside the February 20 default judgment to allow him a further opportunity to comply with the discovery request. On June 14, 1991, RCL filed the required long-arm statute affidavit. On August 16, the court entered an order which provided that "[f]ailure to comply with the terms of this Order will *result in affirmation of the Judgment . . .*". (Italics ours.) Because Mr. Bolt has not complied with the order, we remand the matter for reaffirmation of the default judgment. Filing of the required affidavit, therefore, will have preceded the entry of the default judgment. *Golden Gate Hop Ranch, Inc. v. Velsicol Chem. Corp.*, 66 Wn.2d 469, 472, 403 P.2d 351 (1965), *cert. denied*, 382 U.S. 1025 (1966).

### VERIFICATION OF COMPLAINT

Mr. Bolt contends the default judgment is void because the shareholder derivative complaint was not verified when filed. In response, RCL argues that the initial failure to file a verified complaint is not fatal because the complaint was not a shareholder strike suit[5] and was verified on July 12,

---

[5]Strike suits are brought by persons who make charges without regard to their truth so as to coerce corporate managers to settle worthless claims. *Sur-*

1991. *Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 371-72, 15 L. Ed. 2d 807, 86 S. Ct. 845 (1966).

■ "In a derivative action brought by one or more shareholders . . . the complaint shall be verified . . .". CR 23.1. Verification is the confirmation of the correctness, truth or authenticity of the pleadings. 7C C. Wright, A. Miller & M. Kane, *Federal Practice* § 1827, at 50 n.2 (1986). This state's requirement that a shareholder derivative action be verified is in conformity with Federal Rule of Civil Procedure 23.1 and therefore the construction given to federal rules is pertinent. *In re Green*, 14 Wn. App. 939, 942, 546 P.2d 1230 (1976).

■ The perpetuation of the verification requirement has been justified because of the threat of strike suits. However, in *Surowitz v. Hilton Hotels Corp.*, *supra*, the Supreme Court said that the "basic purpose of the Federal Rules is to administer justice through fair trials, not through summary dismissals as necessary as they may be on occasion." *Surowitz*, at 373. Dismissal, if required, should be with "leave to replead or conditioned on a failure to cure the defect within a reasonable period of time." 7C C. Wright, A. Miller & M. Kane, at 58.

Here, dismissal of the complaint is not required. The derivative action was not a strike suit and RCL has corrected the technical defect. Dismissal at this late date would be based on "mere formalism". *Deaktor v. Fox Grocery Co.*, 332 F. Supp. 536, 541 (W.D. Pa. 1971), *aff'd*, 475 F.2d 1112 (3d Cir.), *cert. denied*, 414 U.S. 867 (1973).

### HARSHNESS OF DEFAULT AS A SANCTION

Mr. Bolt maintains that the court abused its discretion because the imposition of a default judgment is too harsh a sanction for his failure to comply with discovery. He asserts he has provided substantial discovery and that a lesser sanction should have been imposed.

■ ■ The sanction of a default judgment is to be used only when there has been a "willful or deliberate refusal to

obey a discovery order which substantially prejudices the opponent's ability to prepare for trial" and only after the court has considered lesser sanctions. *Snedigar v. Hoddersen,* 114 Wn.2d 153, 169-70, 786 P.2d 781 (1990); *Associated Mortgage Investors v. G.P. Kent Constr. Co.,* 15 Wn. App. 223, 228-29, 548 P.2d 558, *review denied,* 87 Wn.2d 1006 (1976). A violation is willful and deliberate if it is done without reasonable excuse. *Rhinehart v. Seattle Times, Inc.,* 59 Wn. App. 332, 339, 798 P.2d 1155 (1990). The remedy for failure to comply with a discovery order is a matter within the discretion of the trial court. *Snedigar,* at 169; *Rhinehart v. KIRO, Inc.,* 44 Wn. App. 707, 710, 723 P.2d 22 (1986), *review denied,* 108 Wn.2d 1008 (1987).

Mr. Bolt was aware of the court's order compelling discovery and had been advised that default was a potential sanction for his refusal to comply with discovery. The court found that Mr. Bolt's failure to provide discovery was a willful and deliberate disregard of the court's orders which had substantially prejudiced RCL. The court determined that "lesser sanctions would not cure the improper behavior or advance the deterrent aspects of CR 37." Mr. Bolt has not complied with the request for discovery despite being threatened with sanctions, including the threat of a default judgment, even after the court granted his protective order and narrowed the scope of what he was required to produce. The court vacated the default judgment on the condition that Mr. Bolt comply with the discovery request. He failed to do so. Therefore, the court did not abuse its discretion in holding that lesser sanctions would not have been effective and in imposing the default judgment.

### FRAUD PERPETUATED ON THE COURT

■ Finally, Mr. Bolt contends the default judgment was obtained by fraud. He asserts the action by the shareholders was merely an attempt to compel him to get out of the mining venture and that he has not had an opportunity to be heard. Mr. Bolt did not raise the issue of fraud in the trial court. Therefore, we will not consider the argument on appeal.

In sum, the matter is remanded for entry of an order reaffirming the default judgment. RCL's request for attorney fees on appeal is granted. Upon service and filing of an affidavit of fees pursuant to RAP 18.1(d), a commissioner will determine the amount of the award. RAP 18.1(f).

THOMPSON, C.J., and FRIEL, J. Pro Tem., concur.