21 P.3d 1157 (2001)
105 Wash.App. 813
RIGHT-PRICE RECREATION, LLC, a Washington Limited Liability Company, Respondent,
v.
CONNELLS PRAIRIE COMMUNITY COUNCIL, a Washington non-profit Corporation; Pierce County Rural Citizens Association, a Washington non-profit corporation; Jon Salisbury and Jane Doe Salisbury, husband and wife; William Wright and Jane Doe Wright, husband and wife; John Does 1-10 and Jane Does 1-10, Appellants.
No. 25713-1-II.
Court of Appeals of Washington, Division 2.
April 20, 2001.
*1159 Matthew Laurence Sweeney, Fircrest, for Respondent.
Shawn Timothy Newman, Olympia, for Appellants.
Jeffrey L. Fisher, Davis, Wright, Tremaine, Seattle, for American Civil Liberties Union, amicus curiae.
*1158 ARMSTRONG, C.J.
Two citizens' groups opposed a developer's proposal before Pierce County's hearing examiner and county council. The developer, alleging that the groups had made false statements about the proposal, sued for damages for slander, commercial disparagement, tortious interference, and civil conspiracy. When the developer sought discovery of all documents related to the citizens' groups, the groups claimed an associational privilege under the First Amendment. The developer moved to compel production, and the trial court ordered production for in camera review. In this discretionary review of the discovery order, we hold that there is some probability that the requested discovery will harm the groups' First Amendment rights and that the developer has not shown the materiality of the information or that the information could not be otherwise obtained with reasonable efforts. We reverse the discovery order.

*1160 FACTS
Connell's Prairie Community Council (CPCC) and Pierce County Rural Citizens' Association (PCRCA) are citizens' groups (collectively, "the citizens' groups") that opposed two residential subdivisions in unincorporated Pierce County proposed by Right-Price Recreation LLC. After the citizens' groups stated their opposition to Right-Price's proposed developments before the Pierce County Hearing Examiner and the Pierce County Council, Right-Price sued the two groups and their members. The complaint alleged slander, commercial disparagement, tortious interference, and civil conspiracy. The trial court denied the citizens' groups' motion to dismiss. The groups then moved for summary judgment.
Right-Price sought discovery from both groups of all (1) past newsletters, bulletins, press releases or editorials, (2) past bank statements, financial statements, tax returns, and any other financial documentation, (3) membership lists, rosters, or mailing lists, (4) minutes of all meetings held, (5) correspondence sent by the citizens' groups, their officers, directors, and agents to public officials, elected officials, or decision makers, and (6) written correspondence sent by the citizens' groups. Right-Price also sought discovery, from CPCC only, of all (1) petitions and form letters CPCC circulated, (2) correspondence CPCC sent its officers, directors, and agents to other non-profit organizations, and (3) documents stored in any magnetic format generated by CPCC, its officers, directors, and agents.
The citizens' groups objected to these discovery requests, and Right-Price moved to compel production of the documents and information. The trial court ordered the citizens' groups to produce all of the requested documents and information to the court for in camera review. The trial judge concluded that this was necessary because she knew what Right-Price was looking for and needed to find out whether it was available:
[I]t's an unusual case, and I would not normally say I want to review everything in camera, but I feel that's the only recourse I have because ... I know what [Right-Price is] looking for. I don't know that [Right-Price is] going to find it in anything that [the citizens' groups] provide, but I think [Right-Price is] entitled to it. There's some kind of smoking gun there[.]
RP at 7. The court recognized that some of the information would be privileged, but it declined to define what would be privileged. The court also granted Right-Price's motion to continue the hearing on the citizens' groups' summary judgment motion. The citizens' groups obtained an emergency stay of the trial court's order from the Washington Supreme Court, and we granted discretionary review of the interlocutory discovery order.

ANALYSIS
The citizens' groups characterize this lawsuit as a "Strategic Lawsuit Against Public Participation" (SLAPP). A SLAPP is a lawsuit brought in retaliation against a party who has opposed the plaintiff's interests before a government agency. See GEORGE PRING & PENELOPE CANAN, SLAPPS: GETTING SUED FOR SPEAKING OUT 8 (1996). To help prevent such lawsuits, the legislature granted immunity from civil liability to parties who, in good faith, communicate a complaint to a government agency. RCW 4.24.510. The citizens' groups contend that Right-Price sued their groups and members to chill the exercise of their First Amendment rights. In addition to challenging the trial court's discovery order, the citizens' groups raise issues not designated in the notice for discretionary review, contending that the trial court has failed to recognize Right-Price's lawsuit as a SLAPP.

I. Issues Not Designated in Notice for Discretionary Review
Although we granted discretionary review solely on the discovery issue, the citizens' groups ask us to review whether the trial court erred by denying their motion to dismiss and by granting Right-Price's motion to continue the citizens' groups' summary judgment motion. The groups also ask this court to hold the good faith requirement of RCW 4.24.510 unconstitutional. The citizens' *1161 groups urge us to review these issues under RAP 2.4(b), RAP 2.2(a)(3), and RAP 2.5(a).
Under RAP 2.4(b), an appellate court will review an order or ruling "not designated in the notice, including an appealable order, if (1) the order or ruling prejudicially affects the decision designated in the notice, and (2) the order is entered, or the ruling is made, before the appellate court accepts review." The "decision designated in the notice" is the order requiring CPCC to submit the requested documents for in camera review.
RAP 2.4(b) permits review of prior appealable orders "to avoid the problem of precluding review of an order which is not readily identifiable as appealable." Adkins v. Aluminum Co. of Am., 110 Wash.2d 128, 135, 750 P.2d 1257 (1988). In Adkins, the Supreme Court held that a ruling granting a motion for a mistrial prejudicially affected the final judgment in the second trial because otherwise the second trial would not have occurred. Adkins, 110 Wash.2d at 134, 750 P.2d 1257; see also Hwang v. McMahill, 103 Wash.App. 945, 949, 15 P.3d 172 (2000) (order denying a motion for revision prejudicially affected a later default judgment); Behavioral Scis. Inst. v. Great-West Life, 84 Wash.App. 863, 869-70, 930 P.2d 933 (1997) (prior orders prejudicially affected the trial court's final order because the plaintiff's entitlement to relief under the final order was based on the court's earlier rulings). But the Supreme Court construed "prejudicially affected" in a more limited way in Franz v. Lance, 119 Wash.2d 780, 836 P.2d 832 (1992). There, the defendants appealed an order imposing sanctions under CR 11 and RCW 4.84.185. Franz, 119 Wash.2d at 782, 836 P.2d 832. The court held that the notice of appeal included the underlying judgment even though it was not included in the notice. Franz, 119 Wash.2d at 782, 836 P.2d 832. The court reasoned that the sanctions issue "must stand or fall based on the findings and conclusions ... in support of the ... judgment." Franz, 119 Wash.2d at 782, 836 P.2d 832. Thus, under Franz, the previous order prejudicially affects the order designated in the notice of appeal if the order appealed cannot be decided without considering the merits of the previous order. This requires some connection between the two other than that the appealed order would not have occurred if the earlier order had been decided differently. The issues in the two orders must be so entwined that to resolve the order appealed, the court must consider the order not appealed.
The citizens' groups ask us to review the trial court's order denying dismissal. The groups moved to dismiss under RCW 4.24.500, the Anti-SLAPP statute. The court treated the motion as one for judgment on the pleadings under CR 12(b)(6). If the court had granted the motion, the case would have ended. Thus, as Adkins applied the "prejudicially affected" test, the denial of the motion would be reviewable. But, for two significant reasons, we apply the more limited interpretation of "prejudicially affected" used in Franz.
First, Adkins was a direct appeal, not a discretionary, interlocutory appeal. In a direct appeal, if "prejudicially affected" is not construed broadly, the issue omitted from the notice will never be addressed. But in a discretionary review case, the parties still have the right to appeal a final judgment and include for review the trial court's interim rulings and orders, even appealable orders. See RAP 2.4(b); Kreidler v. Eikenberry, 111 Wash.2d 828, 836, 766 P.2d 438 (1989). Thus, a party who seeks discretionary review does not risk losing an issue not named in the notice. Second, if discretionary review includes all rulings that would have terminated the case even though not included in the notice, the scope of discretionary review would be greatly expanded. But discretionary review is not favored because it lends itself to piecemeal, multiple appeals. State v. State Credit Ass'n, Inc., 33 Wash.App. 617, 622, 657 P.2d 327 (1983). For this reason, we grant discretionary review only in limited circumstances. See RAP 2.3(b).[1] If discretionary *1162 review included all of the trial court's decisions that could have terminated the action, we could not limit the scope of review as required by RAP 2.3.
The citizens' groups also urge us to review the trial court's order continuing their summary judgment motion under RAP 2.2(a)(3). The rule provides that a party may appeal from "[a]ny written decision affecting a substantial right in a civil case which in effect determines the action and prevents a final judgment or discontinues the action." RAP 2.2(a)(3). The continuance in this case fails to meet the requirements of this rule. The trial judge continued the summary judgment until we resolve the discovery issue raised in this discretionary review. The continuance did not determine the action, prevent a final judgment, or discontinue the action.
The citizens' groups also argue that it can raise these issues for the first time on appeal because they involve manifest errors affecting constitutional rights. See RAP 2.5(a). But this argument confuses the issues. In a direct appeal, we may consider constitutional issues not raised before the trial court. But this is not a direct appeal; we granted discretionary review of the interlocutory discovery order only. And the issues now raised are issues the trial court considered. The citizens' groups seek to expand the scope of discretionary review by including issues that were raised in the trial court but not included in the petition for discretionary review. The Supreme Court did not intend RAP 2.5(a)'s constitutional error doctrine to apply in this way.
The citizens' groups attempt to use the discretionary review process to avoid further trial court proceedings. Although obvious or probable error by the trial court may warrant discretionary review under RAP 2.3(b) and RAP 5.1(c), we do not favor interlocutory review. Pac. Rock Envtl. Enhancement Group v. Clark County, 92 Wash.App. 777, 782 n. 2, 964 P.2d 1211 (1998). We will not review the trial court's orders preceding the discovery order for which we granted discretionary review.

II. In Camera Review Order
The citizens' groups argue that the trial court erred by requiring production for in camera review the documents Right-Price requested. To assert the associational privilege under the First Amendment, a party resisting disclosure of information need only show some probability that the requested disclosure will infringe upon its First Amendment rights. Snedigar v. Hoddersen, 114 Wash.2d 153, 158, 786 P.2d 781 (1990). The burden then shifts to the party seeking discovery to show (1) the relevance and materiality of the information sought and (2) that reasonable efforts to obtain the information by other means have been unsuccessful. Snedigar, 114 Wash.2d at 164, 786 P.2d 781.
To establish relevance, the party seeking discovery must specifically describe the information sought and its importance: "[m]ere speculation that information might be useful will not suffice; litigants seeking to compel discovery must describe the information they hope to obtain and its importance to their case with a reasonable degree of specificity." Snedigar, 114 Wash.2d at 165, 786 P.2d 781 (quoting Black Panther Party v. Smith, 661 F.2d 1243, 1268 (D.C.Cir.1981), vacated by 458 U.S. 1118, 102 S.Ct. 3505, 73 L.Ed.2d 1381 (1982)). To meet the second requirement, the party seeking discovery must make a "reasonably explicit" showing that every reasonable alternative source of information has been exhausted before the court will order disclosure. Snedigar, 114 Wash.2d at 165, 786 P.2d 781.
If both parties make the required showings, the court then balances the need for disclosure against the claim of privilege to determine which is more compelling. *1163 Snedigar, 114 Wash.2d at 166, 786 P.2d 781. When "clearly necessary" to make this decision, the trial court may undertake in camera review of the requested information. Snedigar, 114 Wash.2d at 166, 786 P.2d 781. But "in camera review of associational materials is not a course to be routinely undertaken in a First Amendment case[.]" Snedigar, 114 Wash.2d at 167, 786 P.2d 781. Rather, in camera review "is justifiable only if essential to fairly evaluate the competing interests at stake." Snedigar, 114 Wash.2d at 167, 786 P.2d 781.
Right-Price argues that the citizens' groups have not met their initial burden of showing some probability that the requested disclosure will infringe upon their First Amendment rights. In Snedigar, the court held that the Freedom Socialist Party (FSP) had shown some probability that disclosure of its meeting minutes would harm its First Amendment rights. The party and other organizations submitted affidavits stating that members had experienced acts of reprisal and harassment and emphasizing the importance of confidentiality of members' names and the content of internal discussions. Snedigar, 114 Wash.2d at 163-64, 786 P.2d 781. In contrast, the court held that an organization failed to satisfy its burden in Rhinehart v. Seattle Times Co., 59 Wash. App. 332, 798 P.2d 1155 (1990). The Seattle Times requested discovery of information from an organization, including membership lists and donation records. Under the principles announced in Snedigar, the court held that the organization could not invoke the associational privilege because it had failed to present evidence showing some probability that discovery would harm its constitutional rights, especially in light of a protective order that limited use of the documents to the litigation. Rhinehart, 59 Wash.App. at 337-38, 798 P.2d 1155.
The citizens' groups argue that the lawsuit "speaks for itself" and ask us to "take judicial notice that the average citizen experiences extreme alarm ... when [a citizen] group or an individual of that group is named as a party in a lawsuit for unspecified damages." Reply Br. of Petitioners at 13, 15. Although the citizens' groups have presented no specific evidence that the discovery request probably infringes upon their First Amendment rights, their situation is similar to the FSP in Snedigar. There, the plaintiff sought members' names and minutes of meetings. Thus, the members of the citizens' groups may share the same concerns of reprisal and harassment as the FSP in Snedigar. Further, Right-Price named individual members of the groups as actual and potential parties to its lawsuit; this also supports the citizens' groups' argument. But to conclude that the citizens' groups have met their burden, we would have to assume that disclosure will probably chill the citizens' groups' exercise of their First Amendment rights.
Some courts have assumed a harmful chilling effect from the nature of the information requested. See Snedigar, 114 Wash.2d at 162-63, 786 P.2d 781. Thus, courts "have overlooked the absence of a factual record of past harassment and, using what can perhaps best be referred to as a commonsense approach, have assumed that disclosure of information will chill an association's First Amendment rights." Snedigar, 114 Wash.2d at 162, 786 P.2d 781. Rather than requiring concrete evidence, these courts view a factual showing of an actual chilling effect as simply one factor that weighs against disclosure. Snedigar, 114 Wash.2d at 162-63, 786 P.2d 781. Accordingly, a presumed chilling effect may outweigh a weak argument in support of disclosure. See Australia/Eastern U.S.A. Shipping Conference v. United States, 537 F.Supp. 807, 812 (D.D.C.1982).
The Snedigar court cites four cases recognizing a potential chilling effect absent concrete evidence. Snedigar, 114 Wash.2d at 162-63, 786 P.2d 781. In one case, the court found that some chilling effect would be inevitable if a longshoremen's political action had to disclose the names of its contributors. Local 1814, Int'l Longshoremen's Ass'n v. Waterfront Comm'n, 667 F.2d 267, 272 (2d Cir.1981). In another case, although the Arkansas Republican Party had submitted no evidence of past reprisals against contributors, the court held that it would be "naive" not to recognize that disclosing contributors' names would subject some contributors to *1164 reprisal, especially in light of the party's unpopularity at the time. Pollard v. Roberts, 283 F.Supp. 248, 258 (E.D.Ark.), aff'd, 393 U.S. 14, 89 S.Ct. 47, 21 L.Ed.2d 14 (1968). In a third case, the United States Supreme Court held that requiring teachers to disclose all organizations to which they belonged would have an inevitable chilling effect. Shelton v. Tucker, 364 U.S. 479, 485-86, 81 S.Ct. 247, 5 L.Ed.2d 231 (1960). Finally, Snedigar cites a case where the United States Supreme Court noted the obvious tendency to restrict freedom of expression of an ordinance requiring names and addresses on all distributed handbills. Talley v. California, 362 U.S. 60, 64, 80 S.Ct. 536, 4 L.Ed.2d 559 (1960).
We conclude that the discovery order here fits within the class of cases where we can assume a potential chilling effect on the group's First Amendment rights. Of particular concern is the scope of the discovery request. Right-Price asks for membership lists, minutes of meetings, and all financial records. In addition, Right-Price seeks virtually every document or piece of correspondence the groups generated. As in Pollard, we would be naive not to recognize that disclosure of this information would chill the members' First Amendment rights. When advocacy groups are required to disclose the identity of their members and the details of all of their activities, the freedom of members to promote their views suffers. Privacy and anonymity are often essential to the free exercise of First Amendment rights. See Talley, 362 U.S. at 64-65, 80 S.Ct. 536.
We turn then to the second step and consider whether Right-Price has shown (1) the relevance and materiality of the information it seeks and (2) that reasonable efforts to obtain the information by other means have been unsuccessful. Snedigar, 114 Wash.2d at 164, 786 P.2d 781.
Right-Price attempted to explain the relevance and materiality of each of its discovery requests in its memorandum in support of its motion to compel production. Right-Price generally contends that each request is likely to lead to information to substantiate its claims. But Right-Price gives no reasons specific enough to rise above mere speculation, as Snedigar requires. Snedigar, 114 Wash.2d at 165, 786 P.2d 781. For example, Right-Price fails to explain how membership lists might reveal a conspiracy or how obtaining information about the citizens' groups' opposition to other developments justifies discovery of all correspondence the organizations ever generated. The trial court's comment is telling:
I know what [Right-Price is] looking for. I don't know that [Right-Price is] going to find it in anything that [the citizens' groups] provide, but I think [Right-Price is] entitled to it. There's some kind of smoking gun there[.]
RP at 7. This expresses no more than speculation that somewhere in the mass of information sought, Right-Price may find support for its theories. This does not meet the Snedigar standards of providing specific reasons to justify the request for information. Snedigar, 114 Wash.2d at 164-65, 786 P.2d 781. Further, even assuming that its reasons are valid, Right-Price has never argued or shown that it has tried other means to obtain the requested information.
Thus, we conclude that Right-Price failed to meet its burden of showing the information's relevance and materiality and showing that it unsuccessfully tried other means to obtain the information. A trial court may undertake in camera review only when clearly necessary to balance the parties' competing interests regarding the discovery. Snedigar, 114 Wash.2d at 166, 786 P.2d 781. Because Right-Price made no specific showing of the relevance and materiality of the information sought, the trial court had nothing to balance, and in camera review was unnecessary.
We hold that the trial court erred in ordering production of documents for in camera review.

III. Attorney Fees
The citizens' groups request attorney fees. A prevailing party under RCW 4.24.510 is entitled to reimbursement of costs and reasonable attorney fees. RCW 4.24.510. But the citizens' groups have not yet prevailed in *1165 the underlying action and, thus, are not entitled to attorney fees.

IV. CR 11 Sanctions
The citizens' groups urge this court to impose sanctions against Right-Price under CR 11 for filing a frivolous lawsuit. At this stage, the record does not support such a finding. We decline to award CR 11 sanctions.
We reverse and remand.
We concur: HOUGHTON, J., BRIDGEWATER, J.
NOTES
[1] Under RAP 2.3(b), we accept discretionary review only

(1) If the superior court has committed an obvious error which would render further proceedings useless;
(2) If the superior court has committed probable error and the decision of the superior court substantially alters the status quo or substantially limits the freedom of a party to act; or
(3) If the superior court has so far departed from the accepted and usual course of judicial proceedings, or so far sanctioned such a departure by an inferior court or administrative agency, as to call for review by the appellate court.